JiGAUDIN, Judge.
A six-person jury in the 24th Judicial District Court found Clarence Williams guilty of possession of phencyclidine and guilty of possession of cocaine (LSA-R.S. 40:966 and 967). He was sentenced as a multiple offender to five years at hard labor on each count, to run concurrently, and fined $2,500.00 on the phencyclidine charge.
On appeal, Williams contends that the trial judge erred in not granting his (Williams’) motion to suppress evidence; also, appellant asks this Court to search for errors patent.
We affirm the trial judge’s denial of the motion to suppress. We did find a sentencing error. Williams was sentenced as a multiple offender on both counts. When a defendant is convicted of two (or more) counts on the same day arising from one criminal episode, the convictions should be counted as only one conviction when applying the habitual offender law; thus, the trial judge mistakenly sentenced Williams as a multiple offender on both possession counts.[1] We therefore void and set aside Williams’ ^sentence as a multiple offender for possession of cocaine. We remand to the district court for resentencing on this count.
Also, we note that the trial judge did not notify Williams of the three-year time limit for applying for post-conviction relief specified in LSA-C.Cr.P. art. 930.8. When Williams is resentenced, the trial judge should inform him of this time limitation.
Williams was arrested on the evening of June 15, 1993 at approximately 10:30 p.m. When two police officers were patrolling in a high crime area of Westwego, Louisiana known for “drive-by” sales of narcotics, they observed Williams walk toward the driver’s side of a parked vehicle. Williams was not able to immediately identify the officers’ unmarked car as a police unit because, as one officer said, the police car’s headlights were on and pointed at Williams.
Williams moments later did recognize the officers’ car. When the police unit was ten yards away, Williams started to walk briskly away. The officers, dressed in black fatigues with “Sheriff’ written across the back and a badge in front, exited their vehicle and one officer shouted, “Stop, police.” Williams took off running with one of the officers in pursuit.
*377 While running away, Williams reached into a pocket and threw away what the pursuing officer called “something white.” Williams was apprehended after he ran into a parked auto. When the officer returned to the spot where Williams had thrown away “something-white,” the abandoned property was found. It consisted of five rocks of crack cocaine and a cigarette laced with phencyclidine.
Appellant argues that while police officers may stop a person in a public place when they have reason to believe that a crime is beingjscommitted or is about to be committed, mere suspicion is not a basis for police interference. Property disposed of as a result of an illegal stop, Williams contends, cannot legally be seized. He cites Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Chopin, 372 So.2d 1222 (La.1979); and other cases.
The state, on the other hand, feels that when Williams abandoned “something white,” he had not been unconstitutionally seized and, further, that an actual stop was not virtually certain.
The police did nothing improper in this case. The trained and experienced officers were in a high crime zone when they saw what appeared to be criminal activity. They had reasonable (not mere) suspicion and they acted accordingly. If an act of abandonment is not caused by an illegal seizure or search, the recovered evidence is fully admissible.
Further, we find merit in the state’s contention that Williams had not been seized and that his seizure was not imminent when he discarded the narcotics he had on his person.
In State v. Tucker, 626 So.2d 707 (La. 1993), the Supreme Court of Louisiana, citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547,113 L.Ed.2d 690 (1991), and State v. Belton, 441 So.2d 1195 (La.1983), stated at pages 712 and 713:
“In Belton we found an individual is ‘seized’ within the meaning of La. Const. Art. 1, Sect. 5 when the individual is either ‘actually stopped’ or when an ‘actual stop’ of the individual is ‘imminent.’ We believe this two-pronged inquiry reflects the aforementioned additional protections of our constitution. That is, while the Fourth Amendment only protects individuals from ‘actual stops’ by law enforcement officers, Hodari D., our constitution also protects individuals from ^imminent actual stops.’ Therefore, it becomes incumbent upon us to now determine what constitutes an ‘actual stop’ and an ‘imminent actual stop’ as those terms were used in Belton.
“After careful consideration of the Ho-dari D. decision, we conclude it correctly identifies when, during a police encounter, an individual has been ‘actually stopped.’ We agree with the United States Supreme Court, an ‘actual stop’ of an individual has not occurred when a police officer yells ‘Halt!’ at a fleeing form which continues to flee. Thus, we hold that an individual has not been ‘actually stopped’ unless he submits to a police show of authority or he is physically contacted by the police. Accordingly, we adopt Hodari D. insofar as it defines when an ‘actual stop’ of a citizen, a seizure under La. Const. Art. 1, Sect. 5, has occurred.
“Giving full weight to the additional protections of La. Const. Art. 1, Sect. 5, we must now determine what constitutes an ‘imminent actual stop.’ This inquiry is necessary for those situations wherein the police attempt to seize an individual but the individual neither submits to the police show of authority nor is physically contacted by the police. Under these circumstances, despite the absence of an ‘actual stop’ as defined above, our constitution might still mandate a finding that the individual had been seized if an ‘actual stop’ of the individual was ‘imminent.’
“In determining whether an ‘actual stop’ of an individual is ‘imminent,’ we find that the focus must be on the degree of certainty that the individual will be ‘actually stopped’ as a result Isof the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual’s attempts to flee or elude the encounter, an actual stop of the indi *378 vidual is virtually certain, that an ‘actual stop’ of the individual is ‘imminent.’ Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an ‘actual stop’ of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
In the instant case, it is clear that Williams was not actually stopped initially, when the police officers stepped from their vehicle. Williams was not physically touched or otherwise restrained and he did not submit to police authority. Instead, he fled.
It is almost as clear, considering the six factors itemized in Tucker, that when Williams ran off and abandoned the narcotics, an actual stop was not imminent. There was only one police unit at the scene and no weapons had been drawn. Williams was not surrounded. He was in a high crime residential zone and it was dark. The only real concern he may have had, if Rhe had any, was that an officer was willing and able to give chase in that particular neighborhood at night.
Admission of the abandoned narcotics did not offend either the Fourth Amendment or the Louisiana Constitution.
We remand for resentencing on the possession of cocaine charge and for Williams to be advised of the Art. 930.8 provisions.
AFFIRMED; REMANDED FOR RE-SENTENCING.

. See State ex rel. Porter v. Butler, 573 So.2d 1106 (La. 1981).