hLOBRANO, Judge.
Defendant, John Sullivan, was charged by grand jury indictment with first degree murder, a violation of Louisiana Revised Statute 14:30. On May 26, 1982, a twelve member jury found defendant guilty as charged. On May 27,1982, following a sentencing hearing, defendant was given the death penalty. After defendant’s motion for new trial was denied, he was sent to the Louisiana State Penitentiary for execution.
After several remands by the Louisiana Supreme Court for various evidentiary hearings on defendant’s new trial motion and questions of ineffective counsel and suppression of alleged Brady material, on March 2, 1992 the court affirmed defendant’s conviction.[1]
Defendant then sought review by the United States Supreme Court which granted cer-tiorari.[2] The high court found that the erroneous jury instruction on reasonable doubt was not harmless error and remanded the case to the |2Louisiana Supreme Court.[3] The Louisiana Supreme Court set aside defendant’s conviction and remanded the matter to the trial court for further proceedings.[4]
After hearing numerous pre-trial motions, defendant’s case went to trial again on October 10 and 13, 1995. The jury found him guilty of second degree murder and he was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. This appeal followed.

FACTS:

During the early morning hours of April 14,1980, the New Orleans Police Department received a call to investigate a shooting at the C-Note Lounge located in the 1700 block of St. Charles Avenue.
Witnesses told police that Joseph King was shot during the perpetration of an armed robbery by two assailants. King died as a result of a shotgun wound to the chest.
Stephanie Lawery, a barmaid at the lounge described the perpetrators as two white males, one approximately 30 years of age, 5 feet, 8 inches tall, weighing 140 pounds with blond shoulder length hair wearing blue jeans and a blue suit jacket. She described the younger male as approximately 25 to 27 years of age, 5 feet, 7 inches tall, weighing 140 pounds with brown shoulder length hair and wearing white pants and a plaid shirt. The older man was carrying the shotgun. Lawery told police that she could identify both men.
Later that day, at approximately noon, police officers Walter Gifford, and Michael Meyers responded to a report of two suspicious men at the Playgirl ^Lounge located at 1926 Magazine Street. The men fit the description of the perpetrators of the C-Note Lounge shooting. Both men were arrested and later identified as defendant, John Sullivan and Michael Hillhouse. Defendant gave his address as 1433 Euterpe Street.
At approximately 2:30 p.m., that same day, Officer Meyers obtained the consent of Brenda Wahl Smith to search the premises at 1433 Euterpe Street. Officer Meyers’ search resulted in the seizure of a 16 gauge sawed off shotgun, a man’s blue longsleeve shirt, a blue pinstripe suit jacket and a black flight bag.
Defendant appeals his conviction and sentence asserting the following assignments of error:
*1247 1) The trial court erred in admitting Michael HiUhouse’s statement to the police as former testimony;
2) Defendant was denied his sixth amendment right to confrontation;
3) Defendant was denied his right to a speedy and fair trial.

ASSIGNMENT OF ERROR 1:

Defendant asserts the trial court erred in admitting the hearsay out-of-court statement given to police by Michael Hillhouse. The facts which form the basis of this argument are as follows:
During the direct examination of Hill-house, the State asked whether he gave a statement to the police following the murder. Hillhouse responded that he remembered talking to the police but did not remember signing a statement or what he told police.[5] When the prosecutor attempted to refer to the content of the | .¡statement, defendant objected. Following a discussion between defense counsel and the court, the court asked Hillhouse a series of questions regarding his recollection. Hillhouse responded that he did not remember making a statement or what he may have said to the police.
The court found Hillhouse’s testimony in regards to his ability to recollect to be honest and truthful. The court also stated that it was convinced that the statement previously made by Hillhouse was made “at the time when the witness was in close proximity to the event and was made under circumstances that at least would have some degree of accuracy in terms of the statements.”
The prosecutor then resumed questioning Hillhouse after giving him the prior statement “to refresh his memory”. Over defense objection, the .prosecutor was allowed to question Hillhouse regarding specific facts contained in the statement, specifically how defendant shot Joseph King and robbed the lounge and patrons. However, when the prosecutor asked Hillhouse if what he testified to at trial was different from the facts in the statement, defense counsel again objected. The court sustained the objection stating the witness cannot vouch for his own testimony. The State then introduced, and the court admitted, the prior statement and the right of arrestee form into evidence.
Defendant argues that the statement should not have been admitted because it was not made under oath and was not subject to cross examination when elicited. In addition, defendant argues this error is not harmless because without 15the statement, the jury could have found reasonable doubt as to defendant’s guilt. We disagree.
Louisiana Code of Evidence Article 801(C) defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted”. Generally, hearsay is not admissible. . However, certain exceptions to the hearsay rule exist.
Louisiana Code of Evidence Article 803(5) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
⅜ ⅜ ⅜ ⅜ ⅜
(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and re *1248 ceived as an exhibit but may not itself be taken into the jury room. This exception is subject to the provisions of Article 612.
We are satisfied that Hillhouse’s statement falls within the above hearsay exception. It is evident from his testimony that Hillhouse recalled certain portions of the incident, but could not recall many of the details. He acknowledged giving the police officers a statement concerning the robbery and murder immediately after his arrest. At trial he identified his signature on that statement and the court conducted an examination of Hillhouse and determined he could not recall the contents of the statement. The statement was given less than twenty-four hours after the murder and was given freely and voluntarily. Many | eof the details of the statement were corroborated by the witness, Stephanie Lawery. It was admissible pursuant to La. C.E. art. 803(5).
Even assuming arguendo that the statement was inadmissible, any error is harmless. The other evidence against defendant is sufficient to support his conviction.
Hillhouse testified that he arrived in New Orleans on April 14, 1980 to work offshore with his uncle. After dropping off his luggage at his uncle’s house, he went to the C-Note Lounge for a drink. According to Hillhouse, he was sitting at a table in the bar when he was approached by defendant. Defendant sat at the table and ordered Hill-house a drink. The defendant asked Hill-house if he “did cocaine”. Hillhouse responded that he did. Defendant then told Hillhouse to roll up a dollar bill and give it to him. Defendant also told Hillhouse that when he saw him (defendant) come out of the restroom, Hillhouse was to go into the restroom. Hillhouse followed defendant’s instruction. When Hillhouse went into the restroom, he did a “line” of cocaine. As Hillhouse walked out of the restroom to return to the table, he observed defendant remove a sawed off shotgun from under his coat and shoot Joseph King. Defendant then instructed him to take a paper bag from the bartender and collect money and jewelry from the bar patrons. The pair then left the bar. Defendant gave Hillhouse the keys to the car and told Hillhouse to drive. Hill-house did not remember the type of car or where he went. He recalled going to an apartment and seeing a woman. He also remembered going to a bar where he and defendant were arrested and taken to the police station. At trial, he identified the defendant as the person who shot King. He admitted to prior convictions for writing bad checks, DWI, burglary, unauthorized gentry, trespassing, grand theft, forgery, trafficking a stolen weapon and carrying a concealed weapon.
Stephanie Lawery testified that defendant and Hillhouse entered the lounge at approximately 4:00 a.m. Defendant went into the restroom and Hillhouse ordered a beer. When defendant came out of the restroom, Hillhouse went into the restroom and defendant ordered a beer. When Hillhouse came out of the restroom, both men walked to the pool table. Hillhouse wanted to play pool. King, who was sitting at the bar, told him that one game cost fifty cents. King then offered to put up a quarter if he could play. King and Hillhouse then played a game of pool. After the game was over, King sat again at the bar. Defendant and Hillhouse sat at a table. Lawery then gave King $2.00 and asked him to go up the street and buy her something to eat. She then turned to serve some customers. As she reached the cash register, she heard a gun shot. She immediately ducked under the counter. When she stood up she saw Hillhouse walking towards her speaking to her in a low voice. She was not able to understand what he was saying. As she turned around, she observed defendant holding a shotgun to a customer’s head. Defendant then ordered her to give him the money in the register. She gave him $150.20. Defendant and Hill-house then left the bar.
Brenda Wahl Smith testified that she lived in New Orleans from 1967 to 1982. She stated she first met defendant in 1967 but did not see him again until March or April of 1980. She allowed defendant to live in her apartment for two to three weeks in 1980. She testified that only she and defendant had keys to her apartment.
*1249 |8She testified that she was home on April 14, 1980. Around 5:00 a.m. that morning, defendant returned to her apartment with Hillhouse. Both men had been drinking. Defendant told her that he and Hillhouse had been drinking and “snuffed” someone. She thought he meant that they had ripped them off. Defendant and Hillhouse stayed at the apartment for about ten minutes. She described defendant as wearing a blue or brown pinstriped suit and carrying a black gym bag. Both men left the apartment. Not too long afterwards, Smith left to go to her mother’s house. She noticed defendant and Hillhouse sitting and drinking in AJ.’s bar. Later that day, when she returned home, two police officers requested her consent to search her apartment. She signed a consent form. The officers seized some clothing, a gym bag and a shotgun. She stated she had not seen the gun.
After defendant’s arrest, Smith visited him in parish prison. Defendant asked Smith to create an alibi for him by convincing one of her friends, a bartender, to state that defendant and Hillhouse were drinking at the bar all night. The friend refused.
Officer Walter Gifford testified at trial that defendant was one of the two men arrested who fit the description of the perpetrators of the robbery and murder at the C-Note Lounge. He also stated that, following his arrest, Hillhouse provided a written signed statement implicating defendant in the crimes.
Officer Michael Meyers testified that after obtaining Smith’s consent to search her apartment, he retrieved a 16 gauge sawed off shotgun, a black vinyl flight bag, a man’s long sleeve shirt and a man’s blue pinstripe suit jacket.
Ballistic tests revealed the slug removed from King’s body was fired from the shotgun seized by police.
19Thus, the evidence presented by the state, even without the introduction of Hill-house’s statement, was sufficient for a jury to find defendant guilty beyond a reasonable doubt.
This assignment of error is without merit.

ASSIGNMENT OF ERROR 2:

Defendant asserts his constitutional right to confront his accusers was violated when the trial court allowed the prior testimony of Stephanie Lawery and Michael Meyers to be read into the record.
A review of the record reveals that defendant failed to object to the introduction of the prior testimony of these witnesses. Failure to object precludes appellate review. La.C.Cr.P. Article 841.
We also note that a stipulation was made as to the unavailability of these witnesses. Even over defendant’s objection, the testimony could have been introduced as an exception to the hearsay rule. La. C.E. arts. 804(A)(3) and 804(B)(1).
Both witnesses were thoroughly cross-examined by defense counsel at the prior trial. Both the direct and cross-examination of the witnesses was read to the jury.
This assignment of error is without merit. ASSIGNMENT OF ERROR 3:
Defendant contends that he was denied a fair and speedy trial. We agree with the State that the record “belies defendant’s assertion”.
hoThe record clearly reveals that any delays in the pursuit of justice in this case were as a direct result of defendant’s exercise of his appeal rights.
The offenses occurred on April 14, 1980. On May 26, 1982 defendant was convicted of first degree murder and sentenced to death. Defendant appealed his conviction and sentence to the Louisiana Supreme Court. The United States Supreme Court granted certio-rari on October 19, 1992. The Louisiana Supreme Court vacated defendant’s conviction and sentence and remanded the ease to the trial court. A second trial was held on November 3 and 7, 1994. Defendant was found guilty of second degree murder. On December 2, 1994, defendant filed a motion for a new trial which was granted on March 16,1995.
At the conclusion of defendant’s third trial on October 13, 1995, defendant, was again found guilty of second degree murder. On *1250 November 17,1995, defendant was sentenced to life imprisonment at hard- labor without benefit of probation, parole or suspension of sentence.
Given the record before us, we find defendant has made no showing that he was denied a fair and speedy trial.
This assignment of error is without merit.
For the reasons assigned above, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. State v. Sullivan, 596 So.2d 177 (La.1992). The court, however, again remanded for resen-tencing.

. Sullivan v. Louisiana, cert, granted, 506 U.S. 939, 113 S.Ct. 373, 121 L.Ed.2d 285 (1992).

. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

. State v. Sullivan, 623 So.2d 1315 (La.1993).

. Hillhouse testified at the instant trial that he suffers with epilepsy and has grand mal seizures. The medications he takes affect his memory. He remembers only "big events”. Hillhouse did not remember the content of the statement. In the statement, Hillhouse stated that prior to entering the lounge, he had been sleeping in defendant’s car. He woke up at 4:00 a.m. and he and defendant then went into the lounge. They bought some drinks and he played a game of pool with King. He then recounts the robbery, shooting, and their flight. He then stated they went to the Polka Dot Lounge where they drank and played pool. Defendant then dropped him off at the AJ. Restaurant. He picked him up at 11:00 a.m. and they went to defendant’s wife’s apartment. The shotgun was on the bed. They then left and went to the Playgirl Lounge where they were arrested.