708 So.2d 1276 (1998)
STATE of Louisiana
v.
Roosevelt GIBSON.
No. 97-KA-1203.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1998.
*1277 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Alison Wallis, Assistant Dist. Attys., Gretna, for Plaintiff-Appellee.
Frederick Kroenke, Louisiana Appellate Project, Baton Rouge, for Defendant-Appellant.
Before GRISBAUM, DUFRESNE and GOTHARD, JJ.
DUFRESNE, Judge.

STATEMENT OF THE CASE
On February 13, 1997, the Jefferson Parish District Attorney filed a bill of information *1278 charging defendant Roosevelt Gibson with possession of cocaine in violation of LSA-R.S. 40:967(C). Defendant pled not guilty and filed a motion to suppress. On September 10, 1997, a jury of six persons was chosen. The next day, the state filed a notice of intent to use defendant's statement at trial. Also on that day, the trial court held a hearing and denied defendant's motion to suppress.
Thereafter, defendant withdrew his former plea of not guilty and after being advised of his Boykin rights, pled guilty as charged in conformity with the plea agreement. The trial judge sentenced defendant to serve one year at hard labor. The trial judge then suspended that sentence and placed defendant on active probation for one year. Defendant subsequently filed a timely motion for appeal.

FACTS
Because defendant entered a guilty plea in this matter, the following factual statement was developed from the suppression hearing. At the hearing, Officer Randy Lambert testified that on January 10, 1997, he was on narcotics complaint duty and received a call over the radio requesting units in the area to proceed to the corner of Majestic and August "where they had four black males selling narcotics." The officer testified that two units went to that location and that two agents were in each vehicle. As the first vehicle approached the corner, two of the men fled on foot, while the other two stayed at the corner. Officer Lambert testified that he recognized defendant as one of the men who fled. He chased defendant on foot, but was unable to catch him. The officer then returned to assist the deputy who was pursuing the other man. The officers were able to catch that man, and he was arrested for "loitering in a drug area."
Later that day, Officer Lambert looked up defendant's last known address and found it to be 6160 August Avenue. The officer then went to that address to find defendant. Mrs. Ollie Gibson, defendant's mother, came to the door and told the officer that defendant was not at home. While he was talking to Mrs. Gibson, Officer Lambert saw defendant walking toward the house. Officer Lambert testified that defendant was "sweating pretty heavy" and was "out of breath." The officer testified that he questioned defendant about what had happened, advised defendant of his Miranda rights, and told him that he was under "investigation." The officer then asked defendant if he lived at that address, and defendant responded affirmatively. Officer Lambert testified that he asked defendant to show Officer Lambert his room, and defendant took the officer inside and showed his room to the officer.
Officer Lambert testified that he then asked defendant if he owned the house, and defendant told the officer that he lived there, but that his mother owned the house. Officer Lambert testified that he asked Mrs. Gibson if she would consent to a search of defendant's room. According to the officer, Mrs. Gibson stated that she had full access to defendant's room and that she would consent. Officer Lambert testified that Mrs. Gibson signed a "rights of arrestee" form and waived her rights, but that Mrs. Gibson was not arrested. Officer Lambert further testified that Mrs. Gibson signed another form in which she consented to the search of defendant's room. After she signed the consent form, the officer searched defendant's room and found a "crackpipe" containing some white rock-like substances. He also found a mirror with a razor blade, and some white residue.
On cross-examination, the officer testified that when he initially interviewed defendant, he saw that defendant had a beer or "something in a bag" and a receipt from the store. The officer stated that he "discarded the receipt because of the fact that the receipt was a good forty-five minutes to an hour after the incident took place." The officer stated that during the search, defendant was standing outside and was not placed in handcuffs until the narcotics were found.
At the hearing, Mrs. Gibson testified that her son arrived while she was talking to the *1279 officers outside of her house. She further testified that shortly after he arrived, the officers asked her son to lie on the ground and then handcuffed him. She stated that after her son was handcuffed, "the officer asked ... permission about the search." She testified that she then showed the officer her son's room.
Defendant testified that he had been visiting a lady named "Toni" who works at West Jefferson Hospital. He said that after he left West Jefferson, he stopped at Winn-Dixie and bought a bottle of vodka and some Seven-Up. He testified that he made the purchase with his credit card, and that the receipt was time-stamped. He stated that as he was walking home, he stopped at the corner to talk to some neighbors. He testified that while he was at the corner, he observed cars pull up to his house. He saw the police officers exit the cars, and walk toward his house. Defendant testified that he was concerned that something had happened to his mother, and so he jogged to the house. Defendant stated that when he arrived at the house, the officers told him that someone had called and reported that he was the one who had just run from them a short while before.
Defendant further testified that he did not show the officers into the house. He said that he was arrested as soon as he got to his residence, and that the officers "put cuffs on [him] and set [him] down in the grass". He testified that he was not read his Miranda rights.
After argument by the state and defense, the trial court denied the motion to suppress.

ASSIGNMENT OF ERROR NUMBER ONE
The trial judge improperly denied the defendant's Motion to Suppress the evidence.

DISCUSSION
The record reflects that defendant sufficiently reserved his right to appeal the trial court's ruling because defense counsel noted an objection to that ruling and defendant specifically asked the trial judge how long he would have to appeal.
By this assignment of error, defendant asserts that the trial judge improperly refused to suppress the contraband found in his room. Defendant contends that he was arrested without probable cause and thus, his mother's consent given after his illegal arrest was invalid. Defendant argues that the trial judge should have suppressed this evidence because it was the fruit of his illegal arrest. The state contends that defendant was arrested after his mother voluntarily consented to a search of his room and after the contraband was found therein. To resolve this issue, it must be determined at what point in time the defendant was arrested. The relevant time periods are: the encounter at the corner and the subsequent encounter with the police at defendant's residence.
Defendant initially contends that he was "stopped" when the police approached the corner and argues that there was insufficient reasonable suspicion of criminal activity to justify that stop. The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals from unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to a police show of authority or is physically contacted by the police. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).
Here the defendant was not "actually stopped." Officer Lambert testified that he recognized defendant as one of the men who fled when the first police car approached the corner. Officer Lambert pursued defendant, but was unable to catch him. Thus, defendant was not actually stopped because he neither submitted to a show of authority by Officer Lambert nor was he physically contacted by the officer.
An actual stop was not imminent. In a case similar to the instant matter, State v. *1280 Williams, 94-847, (La.App. 5 Cir. 4/12/95), 655 So.2d 375, 378, this Court held that a stop was not imminent where defendant fled on foot, was chased by one officer, but was not surrounded by the police and no weapons were drawn. Here, as in Williams, defendant was not "surrounded by the police." The record reflects that only two police cars occupied by two officers approached the corner where defendant was standing. Only one of the policemen, Officer Lambert, pursued defendant. Additionally, defendant was able to successfully elude Officer Lambert.
As to the encounter with the police when defendant arrived at his residence; defendant contends that he was arrested without probable cause at this time.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La.1985). An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal. State v. Chirlow, 617 So.2d 1, 5 (La.App. 5 Cir.1992), writ denied, 620 So.2d 874 (La.1993).
The issue is whether the circumstances indicated that Officer Lambert "intended to effect an extended restraint" on defendant's liberty. According to defendant, he was told by the officers when he arrived at his residence that someone reported him to be the person who had fled in a "raid or sweep" that had just occurred. He also testified that he was arrested and handcuffed almost immediately upon his arrival. According to Officer Lambert, he advised defendant of his Miranda rights and told defendant that he was under "investigation." He also asked defendant if he lived at that residence, and whether or not he owned the residence. Finally, Officer Lambert testified that he asked defendant if he would show him where his room was located. Officer Lambert testified that defendant took him inside and showed him the room where he stayed. Thus, this encounter was not an arrest.
The United States and Louisiana constitutions prohibit unreasonable searches and seizures. It is well established that warrantless searches and seizures are unreasonable per se unless justified by one of the specific exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). As the state relied on consent to justify a warrantless search, it had the burden of proving the consent was given freely and voluntarily.
In the present case, Officer Lambert's account of the events preceding defendant's arrest differs from defendant's and his mother's version. Officer Lambert testified at the suppression hearing that defendant was not in handcuffs and was standing outside while the officer searched defendant's room. The officer further testified that defendant was not arrested until after he found the narcotics in defendant's room. Defendant and his mother, however, testified that defendant was placed in handcuffs and was arrested almost immediately upon his arrival at the residence.
Defendant urges this Court to accept the defense version of events and relies on State v. Summers, 440 So.2d 911 (La.App. 2 Cir. 1983), as authority for this position. In Summers, officers illegally entered defendant's residence and arrested defendant. They then requested defendant's girlfriend to consent to a search of the premises. The Summers court noted that the trial court's determination regarding the credibility of witnesses is entitled to great weight. But, the court stated that the trial court committed legal error because it failed to consider "essentially uncontradicted evidence" that showed that defendant's girlfriend's "consent to search was not sufficiently an act of free *1281 will so as to purge the taint of the initial illegality." Summers, at 914.
In the present case, however, the only uncontradicted evidence is that Officer Lambert asked defendant some questions upon his arrival at the residence. Beyond that, the defense version and Officer Lambert's testimony are at odds. At the hearing, Officer Lambert testified that defendant showed him the room where he was staying. The officer then asked if defendant owned the house, and defendant answered that he lived there, but that his mother owned the house. Officer Lambert testified that when he asked Mrs. Gibson if he could search defendant's room, she replied affirmatively, and stated that she had "full access to his room." Officer Lambert further testified that Mrs. Gibson was advised of her rights and signed a "rights of arrestee form" as well as a consent to search form. Mrs. Gibson then showed Officer Lambert defendant's room. Mrs. Gibson testified that she gave the officers permission to enter the house. She further testified that the police officer asked to search the house after her son was in handcuffs. In response to defense counsel's question as to whether she was frightened, she stated: "Well, I was like I didn't know what was going on. And I don't sayI don't know whether I was frightened or to say I'm trying to get in my mindasking questions in my mind of what's going on, you know." After hearing this testimony, the trial judge found that Mrs. Gibson was not afraid when she gave her consent and denied the motion to suppress.
Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. State v. Edwards, 434 So.2d 395 (La.1983); State v. Isaacs, 95-173, (La.App. 5 Cir. 6/28/95), 658 So.2d 29, 31, writ denied, 95-1948 (La.1/5/96), 666 So.2d 299. A trial court's factual determinations are entitled to great weight on appellate review. State v. Ellis, 94-599 (La. App. 5 Cir. 5/30/95), 657 So.2d 341, 360, writ denied, 95-2095 (La.12/8/95), 664 So.2d 421, 95-1639 (La.1/5/96), 666 So.2d 300. The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Lassere, 95-1009, (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 818, writ denied, 95-1009 (La.10/1/96), 683 So.2d 812, 96-2655 (La.4/18/97), 692 So.2d 445. The trial judge apparently accepted Officer Lambert's version of the events over defendant's and Mrs. Gibson's version. When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trier of fact and will not be disturbed on review unless clearly contrary to the evidence. State v. Winters, 94-848 (La.App. 5 Cir. 4/25/95), 655 So.2d 412, 415. Thus, there was no error in the trial judge's determination that Mrs. Gibson's consent was voluntarily given.
This assignment of error lacks merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990); and State v. Godejohn, 425 So.2d 750 (La. 1983). The record reflects that the trial court failed to completely advise defendant of the prescriptive period in which to file for post conviction relief at sentencing as required by LSA-C.Cr.P. art. 930.8. In addressing this type of error, we have remanded the case to the district court and ordered it to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. State v. Kershaw, 94-141, (La.App. 5 Cir. 9/14/94), 643 So.2d 1289, 1291.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.