735 So.2d 62 (1999)
STATE of Louisiana
v.
Brian WILLIAMS.
No. 98-KA-1006.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*67 Katherine M. Franks, Baton Rouge, Attorney for Appellant.
Paul D. Connick, Jr., District Attorney Rebecca J. Becker, Terry Boudreaux, Gregory M. Kennedy, Nancy Miller, Assistant District Attorneys, Gretna, Attorneys for Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
EDWARDS, Judge.
Defendant Brian Williams appeals his conviction of a violation of LSA-R.S. 14:95 E, illegal carrying of weapons while in possession of a controlled dangerous substance. We affirm.
Williams was charged with the above offense and, following his plea of not guilty, filed a motion to suppress his confession and a motion to quash the indictment.[1] The latter motion was partially based on his contention that the statute is unconstitutional. The motions were heard and denied, and the case proceeded to trial.
On September 25, 1997, officers with the Jefferson Parish Sheriffs Office received information from a confidential informant about illegal narcotics sales from a residence in Avondale. The confidential informant told Agents Kenneth LaMulle and Richard Valley that a man named Brian Williams would be leaving his residence at 173 Nicole Boulevard around 11:45 p.m. on September 25, 1997 carrying a quantity of illegal narcotics. As a result of the information, the Jefferson Parish Sheriff's Office began surveillance of the house on September 25, 1997, at approximately 11:00 p.m.
At approximately 11:45 p.m., the agents observed a man who fit the description of the suspect leave the house, get into a car which matched the description given by the informant to the police and drive away. Two other vehicles left the house at the same time. The agents decided to conduct an investigatory stop on all three vehicles based on the information obtained from the confidential informant. Because there was more than one vehicle, the agents radioed Deputy Raymond Villani, who was waiting in a police unit nearby. Deputy Villani made a "routine" stop of the vehicle, had the occupants exit "for safety purposes", and obtained their respective identifications. The passenger was identified as the defendant.
Deputy Villani testified that upon looking into the car with his flashlight, he saw, in plain view, and retrieved, two clear plastic *68 bags, one of which contained white powder and a second which contained green vegetable-type matter, from the floor of the back seat. The occupants were detained on the scene, while the contents of the bags were field-tested. The test was positive for narcotics. Defendant was transported to his house on Nicole Boulevard and transferred to the custody of the narcotics detectives.
At defendant's house Williams was advised of his rights and his consent to search his bedroom was secured. A Sheriff's Office Rights of Arrestee form was admitted evidencing the waiver of rights signed by defendant. Defendant consented to a search of his bedroom. A written Consent to Search form was also introduced as having been executed by Williams. Agent LaMulle obtained consent from the owner of the house, Gerilyn Chaisson, to search the entire premises.
After he gave his verbal and written consent to search, defendant told the agents that he had narcotics and a gun hidden in a boot on a shelf in his room. Upon searching the area the agents removed the boot and found a semi-automatic pistol, a clear plastic bag containing white powder and another bag with green vegetable matter. The substances later tested positive for cocaine and marijuana. Defendant also pointed out a black bag which contained a triple beam scale, plastic sandwich bags, a knife and other drug paraphernalia. The narcotics agents transported defendant to the Detective Bureau where his statement of the events of September 25, 1997 was taken.
Defendant testified on his own behalf that on the night in question, his ex-fiancé picked him up to go for a talk. When the vehicle was stopped, the deputy put him on the ground, got into the car and searched. Another car pulled up and several officers searched the vehicle. One of the officers took out a baggie, got back under the seat and found another baggie. He was handcuffed, at which time he told the officers that his girlfriend had no knowledge of the drugs. He denied giving initial permission to search. However, after signing the paperwork he cooperated and showed them where the rest of the drugs were. He forgot there was a gun there. The gun belonged to a friend. The day before they had gotten drunk and "a situation" happened with the gun. He took the clip out, put the gun in one boot, which did not contain his drugs, and put the clip under his mattress.
Geralyn Chaisson testified at the suppression hearing that she was not coerced into allowing the search of her home. At trial she stated that she initially agreed to the search, then later changed her mind, but was told by the officers that if any drugs were found in the home, she would "be responsible" for it. Thereafter, she permitted the search. A consent form signed by the witness was admitted into evidence. The only person who had access to defendant's room was the defendant himself.
Gerald Parfait, a friend of the defendant, testified that the defendant and others were drinking one night and defendant kept the gun in question to make sure that no one got hurt. He did not know the name of the person who owned the gun.
After the presentation of the evidence, the jury found defendant guilty as charged. Williams was sentenced to five years at hard labor without benefit of parole, probation, or suspension of sentence. He was given credit for time served. He appeals his conviction.

ASSIGNMENT OF ERROR # 1-DENIAL OF THE MOTION TO QUASH CONSTITUTED ERROR.
Defendant avers that the trial court erred in denying his Motions to Quash, which motions specifically urged that R.S. 14:95(E) is unconstitutional. It was averred that the statute is unconstitutional on its face in that it creates an unreasonable restriction on the constitutional right to bear arms. It was further argued that the statute was vague and *69 overbroad as applied to this case. Defendant argues that the statute is intended to apply to one in possession of a weapon in his immediate control, who is also in the immediate possession of controlled drugs.
In determining the constitutionality of a statute, we must follow the basic rules of statutory construction. A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. A statute should be upheld whenever possible. Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3.

State v. Muschkat, 96-2922, (La.3/4/98), 706 So.2d 429, (citations omitted).
The Supreme Court, in State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, considered the constitutional "vagueness" argument relative to R.S. 14:95(E):
... vague statutes must fall because they violate the due process clauses of the United States Constitution, amend. XIV, and the Louisiana Constitution, art. I, §§ 2 and 13. A penal statute is unconstitutionally vague if it does not give persons of reasonable intelligence adequate notice that certain conduct is proscribed and punishable by law or if it does not provide sufficient standards by which guilt or innocence may be determined. State v. Sandifer, supra.

In Sandifer, the Supreme Court held that the word "possess" in LSA-R.S. 14:95(E) does not need to be statutorily defined because it has a "well known and commonly understood meaning." Id. at 1331. The Court held that "possession" as it appears in LSA-R.S. 14:95(E), as in the other statutes pertaining to drug or gun possession, includes both "actual" and "constructive" possession. Id. A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control. State v. Ruffin, 96-226 (La.App. 5th Cir. 8/28/96), 680 So.2d 85.
Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Riley, 587 So.2d 130 (La.App. 2nd Cir. 1991). The mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance, is insufficient to constitute constructive possession, State v. Cann, 319 So.2d 396 (La.1975); State v. Egana, 97-0318 (La.App. 4th Cir. 12/3/97), 703 So.2d 223, However, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. State v. Johnson, 404 So.2d 239 (La.1981).
Several factors may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession. They are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia and (6) evidence that the area was frequented by drug users. State v. Appacrombie, 616 So.2d 285, 288 (La.App. 2nd Cir.1993), writ denied, 623 So.2d 1302 (La. 1993).
The trial testimony in this case reveals that cocaine, marijuana, and a gun were found in the defendant's bedroom, and that along with the cocaine the police found a black bag which contained a triple beam scale, plastic sandwich bags, a knife, loose clear plastic bags and two boxes of clear plastic bags. At trial, defendant admitted that the drugs and the gun were in his bedroom and that he was the only person with control over the things in his bedroom. Ultimately, defendant admitted on the witness stand that he was in possession *70 of the gun and drugs because he was the only person who knew that the items were hidden. Based on the foregoing it is clear that the State proved that defendant constructively possessed the items which were found in his room during the consent search. The statute is not vague as pertains to the defendant. See State v. Sandifer, supra.
The Supreme Court stated in State v. Cinel, 646 So.2d 309, (La.1994):
Overbreadth doctrine has wide-ranging effects, for a statute found to be substantially overbroad is subject to facial invalidation. It is strong medicine, to be applied sparingly and only as a last resort. Broadrick v. Oklahoma, 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).
Although both the United States and the Louisiana constitutions provide for the right of a citizen to possess arms, the State of Louisiana is entitled to regulate a citizens' right to bear arms for legitimate state purposes, such as public health and safety. State v. Hamlin, 497 So.2d 1369, 1371 (La.1986); State v. Sandifer, supra. The aim of the legislature in enacting the present statute was to criminalize possession and/or use of a dangerous weapon, including a firearm, in order to prevent those engaged in drug use and distribution from engaging in the violent behavior endemic to the trade. This statute was enacted not solely for the protection of police officers, as defendant contends, but also for the protection of the general public.
[t]here are many practical considerations underlying a law that clearly recognizes the danger and proliferation of guns in the commission of violent or attempted violent offenses or during the commission of drug offenses. Dangerous weapons are the tools of trade in the illegal drug business.
State v. Warner 94-2649, (La.App. 4th Cir. 3/16/95), 653 So.2d 57, writ denied 95-0943 (La. 5/19/95), 654 So.2d 1089. We find no support for the defendant's proposition that one engaging in the proscribed criminal behavior, that is, illegal possession, sale, or distribution of controlled dangerous substances, has the equal right to possess or bear arms as does the law-abiding citizen. The statute is neither vague nor overbroad either facially, or as applied to this defendant. This assignment is without merit.

ASSIGNMENT OF ERROR #2THE TRIAL JUDGE'S DENIAL OF THE MOTION TO SUPPRESS EVIDENCE CONSTITUTED ERROR.
Defendant specifically contends that the seizure of the drugs from his car was the result of an invalid stop. He further challenges the trial court's failure to suppress evidence seized from his residence. Defendant characterizes the initial stop as an "arrest" requiring the officers to have probable cause to believe that the appellant was committing a crime, rather than to have reasonable suspicion of criminal activity.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1 and by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Charles, 95-498 (La.App. 5th Cir. 12/13/95), 666 So.2d 1147. Reasonable cause for an investigatory stop is something less than probable cause to arrest: It requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual's right to be free of government interference. State v. Belton, supra; State v. Barnes, 592 So.2d 1352 (La.App. 5th Cir.1991); State v. Ayche, 98-191 (La.App. 5th Cir. 7/28/98), 717 So.2d 1218.
The dispositive issue as to the lawfulness of the stop is whether the officers had knowledge of specific, articulable *71 facts which, if taken together with rational inferences from those facts, supported the reasonable belief that defendant or someone in the vehicle which he was driving was committing, was about to commit, or had committed a crime, thus warranting the investigatory stop.
State v. Sanchez, 617 So.2d 948,(La.App. 4th Cir.1993).
These facts should be evaluated in light of the circumstances surrounding the incident. State v. Davis, 547 So.2d 1367, 1375 (La.App. 5th Cir.1989), writ denied, 556 So.2d 53 (La.1990); State v. Sanders, 97-892 (La.App. 5th Cir. 3/25/98), 717 So.2d 234. A court's inquiry into the existence of reasonable suspicion should entail practical consideration of the cumulative effect of all facts articulated by the officer, further taking into account the probative value of such facts to the trained law enforcement official observing them. State v. Short, 95-742, (La. App. 5th Cir. 1/30/96), 668 So.2d 1240. In order to determine whether reasonable suspicion exists, the totality of the circumstances, "the whole picture," must be considered. State v. Kalie, 96-2650, p. 2 (La.9/19/97), 699 So.2d 879; State v. Belton, 441 So.2d at 1198.
An informant's tip can provide a police officer with reasonable cause to detain and question a suspect. Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Jernigan, 377 So.2d 1222, 1224 (La.1979), cert. denied, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980); State v. Miskel, 95-584 (La. App. 5th Cir. 1/30/96), 668 So.2d 1299. Although we are not concerned here with the more onerous standard of probable cause, we note that our Supreme Court has recently discussed factors regarding a tip from a confidential informant:
While probable cause must be determined on the totality of the circumstances, an informant's reliability, veracity and basis of knowledge are "all highly relevant." Illinois v. Gates, 462 U.S. 213[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983); State v. Ruffin, 448 So.2d 1274, 1278 (La.1984). A confidential informant may provide adequate information to establish probable cause for a warrantless arrest, so long as the basis for the informant's knowledge and the informant's reliability, when examined under the totality of the circumstances, are established.
State v. Fisher, 97-K-1133 (La.9/9/98), 720 So.2d 1179.
In the present case, the tip from the confidential informer, previously found to be reliable by one of the agents involved, contained predictive information from which the officers could reasonably determine that the informant had "inside information" or a "special familiarity" with defendant's affairs. Compare State v. Robertson 97-KK-2960, (La.10/20/98), 721 So.2d 1268, 1998 WL 727417.
Here, the evidence supports the conclusion of the trial court that Officer Villani had a reasonable suspicion of criminal activity pursuant to C.Cr.P. art. 215.1 sufficient to justify the initial stop. Defendant characterizes the detention at that point as being an arrest, rather than a stop. We do not find that the circumstances indicated an intent to effect an extended restraint on the liberty of the defendant until after the drugs were discovered in plain view. The officer ascertained the identification of the occupants and removed them from the vehicle for safety reasons. Considering his information of the suspect as having illegal drugs, such action is reasonable. Until the point that the drugs were discovered, this was a lawful investigatory stop under C.Cr. P. art. 215.1.
It is well-settled in federal and state jurisprudence that police officers may seize contraband detected during the lawful execution of an investigatory stop. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Horton v. California, 496 U.S. 128, 136-137, *72 110 S.Ct. 2301, 2307-2308, 110 L.Ed.2d 112 (1990); State v. Harris, 97-1620 (La.App. 4th Cir. 8/27/97), 700 So.2d 222. Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature which is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. Horton, 496 U.S. at 136-137; State v. Perkins 97-1119 (La. App. 3rd Cir. 6/17/98), 716 So.2d 120.
In this case, because the initial detention of the defendant was a valid investigatory stop, the police officer had a right to be standing next to the vehicle on the rear passenger side. Two clear plastic bags were on the floor of the back seat and fell into the officer's plain view. Deputy Villani testified that he retrieved the bags from the floor of the back seat because he believed that they contained illegal narcotics, specifically, cocaine and marijuana. The State has borne its burden of proving that the search was justified under one of the exceptions to the warrant requirement. State v. Diaz-Rubio, 615 So.2d 1124, 1127 (La.App. 5th Cir.1993), writ denied, 93-1010 (La.9/30/94), 642 So.2d 866. The narcotics found in the car were legally seized under the `plain view' exception to the warrant requirement.
Under La.C.Cr. P. 201, in order to constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him. An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest. State v. Raheem, 464 So.2d 293, 296 (La. 1985); State v. Gibson, 97-1203 La.App. 5th Cir. 3/25/98, 708 So.2d 1276. An arrest made without probable cause is illegal and the seizure of evidence pursuant to an illegal arrest is also illegal. State v. Chirlow, 617 So.2d 1, 5 (La.App. 5th Cir.1992), writ denied, 620 So.2d 874 (La.1993); State v. Gibson, supra.
When Deputy Villani saw the clear plastic bags containing substances which were later identified as cocaine and marijuana, his reasonable suspicion to stop and investigate ripened into probable cause to arrest. Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Short, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Short, supra. We find that the appearance of the two bags, combined with the facts and circumstances known to the officer, were sufficient to justify a belief that defendant was in possession of illegal drugs. There is no basis for defendant's contention that the arrest was unlawful.
After the contents of the bags tested positive for narcotics, defendant was advised of his rights and transported back to the house. He was advised of his rights, and signed a waiver as well as a consent to search form. The owner of the home, Ms. Chaisson, also consented to a search of the premises.
One of the specifically established exceptions to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Wilson, 467 So.2d 503 (La.1985), cert. denied, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). When the State relies on consent to justify a warrantless search, it has the burden of proving consent was freely and voluntarily given. State v. Gibson, supra.
*73 Voluntariness of consent is a question of fact to be determined by the trial judge under the totality of the circumstances. Id. A trial court's factual determinations are entitled to great weight on appellate review. Id. When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trier of fact and will not be disturbed on review unless clearly contradictory to the evidence. Id.
During the suppression hearing defendant claimed that Chaisson was threatened with seizure of her home. Defendant testified that the officers who searched the residence at 173 Nicole Boulevard took Ms. Chaisson into a back room after she had revoked her consent. When they returned, she told defendant that the police told her that she had to "sign the paper" or the police could seize her house if illegal narcotics were found during a search. However, Chaisson testified at the suppression hearing that she was not threatened by the officers when they asked for her permission to search the house.
In this case the trial judge apparently accepted the police officer's and Ms. Chaisson's version of the events that occurred after defendant's arrest instead of defendant's version. After considering the testimony of the witnesses, the trial judge denied defendant's motion to suppress the evidence, stating in part:
The Court is going to deny the Motion to Suppress the Evidence. The officers testified that they were in plain view. There was reasonable suspicion to stop for an investigatory stop, based upon the information that they had prior to. The Court will make the comment that the defendant has already been either mistaken or lied in his testimony. He indicated that the owner of the house was threatened, and she just took the stand and she was not, she freely and voluntarily gave information, so anything that he says is suspect to this court; so based upon those reasons I am going to deny the Motion to Suppress the Evidence. Okay.
The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Gibson, supra. In summary the testimony at the suppression hearing supports the trial court's finding that the initial stop was investigatory and was based on reasonable suspicion; that the drugs seized from the car were in plain view; that defendant consented to the search of his bedroom where the gun and drugs were found, and, thus, that the evidence was admissible at trial on the merits. Based on the foregoing, the trial court did not err in denying defendant's motion to suppress the evidence. This assignment of error two lacks merit.

ASSIGNMENT OF ERROR # THREE THE TRIAL JUDGE'S DENIAL OF THE MOTION TO SUPPRESS STATEMENT CONSTITUTED ERROR.
Defendant argues in assignment of error three that the trial court erred in denying his motion to suppress any statements he made to police officers both before and after his arrest.
Before the State may introduce a confession or statement for consideration by the jury, the State must prove beyond a reasonable doubt that the statement or confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, and promises. State v. Snyder, 97-226, p. 9 (La.App. 5th Cir. 9/30/97), 700 So.2d 1082, 1087. If the statement is made during a custodial interrogation, the State must prove that the declarant was advised of his constitutional rights. Id. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been deprived of his freedom of action in any significant way. Spontaneous and voluntary statements not *74 given as a result of police interrogation or compelling influence, are admissible in evidence without Miranda warnings, even where a defendant is in custody." State v. Castillo, 389 So.2d 1307, 1310 (La.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Pardon, 97-248 (La.App. 5th Cir. 10/15/97), 703 So.2d 50.
In defendant's brief before this Court, appellate counsel does not clarify which of two possible statements "[was] not attenuated from the illegal arrest and warrants suppression as exploitation of the initial and subsequent illegal police conduct."
The first declaration by defendant was at the site of the investigatory stop. Deputy Villani testified that once the contents of the clear plastic bags field-tested positive the defendant was detained and informed of his constitutional rights At this point, although defendant was not being questioned, defendant told Deputy Villani that the drugs found in the car belonged to him. Although defendant was in custody, this spontaneous declaration which was not a result of police questioning was voluntary and therefore admissible.
The second declaration is defendant's taped statement taken at the Detective Bureau. Agent Valley testified that he was present when defendant's statement was taken after defendant was again informed of his rights. In his statement defendant indicated that he had been advised of his rights and signed a form to that effect. According to his statement defendant admitted that the cocaine and marijuana found in the car when he and his ex-girlfriend were stopped earlier that evening belonged to him.. He admitted that the cocaine and marijuana were "sitting (sic) under the front seat."
According to Agent Valley, defendant's statement was given freely and voluntarily. In his taped statement defendant states that his statement was being freely and voluntarily given. More importantly, during the suppression hearing, defendant admitted on cross-examination that the statement was freely given to the police.
Voluntariness of the statement is to be determined on a case-by-case basis. State v. Snyder, supra at 1087. The trial judge's conclusions regarding the credibility and weight of the testimony relating to the voluntariness of the confession or statement will not be overturned unless they are not supported by the evidence. Id.
The trial judge heard the testimony of Agent Valley and Deputy Villani and concluded that defendant's statements were given of his own will, and are admissible as evidence. Based on the foregoing, the trial judge did not err in denying defendant's motion to suppress the statement. This assignment of error likewise lacks merit.

ASSIGNMENT OF ERROR # FOUR TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO FILE A MOTION IN LIMINE OR OBJECT TO THE DISTRICT ATTORNEYS CLASSIFICATION AS A DRUG "DEALER" AND IN THE INTRODUCTION OF "DRUG PARAPHERNALIA" AT TRIAL WHEN SUCH EVIDENCE WAS NOT NEEDED TO ESTABLISH THE ELEMENTS OF THE OFFENSE CHARGED AND ONLY SERVED TO PREJUDICE THE APPELLANT BEFORE THE JURY AND FORCE HIM TO DEFEND AGAINST AN UNCHARGED OFFENSE.
By this assignment defendant argues that he was denied effective assistance of counsel, based upon two claims: 1) the introduction of inadmissible hearsay evidence without objection, and, 2) the introduction of "other crimes" evidence without objection.
The Louisiana Supreme Court has held that a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, to afford the parties an adequate record for review. *75 State v. Cousan, 94-2503, (La.11/25/96), 684 So.2d 382, 391; State v. Solar, 93-1402 (La.App. 5th Cir. 4/26/94), 636 So.2d 1069, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450, 94-1361 (La.11/4/94), 644 So.2d 1055. It is well settled that where the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780 (La.1993); State v. Soler, supra at 1075.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and, (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, supra.
To show "prejudice" as required in order to establish ineffective assistance of counsel, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. State v. Soler, supra. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Because there is no precise definition of reasonably effective assistance of counsel, any inquiry into the effectiveness of counsel must necessarily be individualized and fact-driven. State v. Peart, supra. It is not enough for an accused to make allegations of ineffectiveness. The accused must couple these allegations with a specific showing of prejudice. State v. Brogan, 453 So.2d 325 (La.App. 3rd Cir.1984), writ denied, 457 So.2d 1200 (La.1984); State v. Morris, 98-236 (La.App. 5th Cir. 9/16/98), 719 So.2d 1076.
The defendant argues that trial counsel was ineffective for failure to object to the following testimony offered by Agent Kenneth LaMulle. He argues that the testimony constituted inadmissible hearsay and inadmissible "other crimes evidence." Defendant argues that he was prejudiced by the wrongful admission of evidence.
During trial the following exchange took place between the assistant district attorney, and witness, Agent Kenneth LaMulle:
PROSECUTOR (Ms. Miller):
What caused you to conduct your surveillance around that house?
WITNESS (Agent Kenneth LaMulle):
An informant had contacted me and advised me that a subject that lived in that house was dealing illegal narcotics, and that subject would be leaving his house with a quantity of narcotics at a particular date and time.
Defendant urges that his counsel should have objected to this testimony as inadmissible hearsay.
Hearsay is an oral or written assertion, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. LSA-C.E. arts. 801(A)(1) & 801(C). Hearsay evidence is not admissible except as otherwise provided by the Code of Evidence or other legislation. LSA-C.E. art. 802; State v. Soler, supra at 1078. A witness is generally competent to testify that a statement was made to him so long as no attempt is made to vouch for the credibility of its contents. State v. Watson, 449 So.2d 1321, 1328 (La.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985); State v. Batiste, 96-1010 (La.App. 5th Cir. 1/27/98), 708 So.2d 764, 770, writ denied, 98-0913 (La.9/4/98), 723 So.2d 954. A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the *76 assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the officer. State v. Watson, supra at 1328; State v. Soler, supra at 1078.
In the instant case Agent LaMulle's testimony was offered to explain the sequence of events which led to defendant's arrest, not to prove the truth of the assertion that the defendant dealt drugs. The statement did not constitute hearsay.
The defendant also argues that trial counsel was ineffective for failure to object to Agent LaMulle's statement because it constituted an impermissible reference to "other crimes" evidence. Defendant further argues that trial counsel was ineffective for failure to object when evidence of the contents of a black bag seized from defendant's bedroom was introduced.
Generally, evidence of other acts of misconduct is inadmissible. LSA-C.E. art. 404(B)(1); State v. Prieur, 277 So.2d 126 (La.1973). However, there are statutory and jurisprudential exceptions to this exclusionary rule, when the evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character. Even if independently relevant the probative value of such evidence must be weighed against its prejudicial effect. State v. Silguero, 608 So.2d 627 (La.1992); State v. Pardon, supra at 56.
While our Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." LSA-C.E. art. 404B(1). Formerly known as "res geste," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Brown, 95-124, p. 5 (La.App. 5th Cir. 5/30/95), 656 So.2d 1070, 1074-1075.
The Louisiana Supreme Court addressed the issue of "other crimes evidence" in State v. Brewington, 601 So.2d 656, 656-657 (La.1992), stating in part, that:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La. 1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed.1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence Sec. 218 (3d ed.1940). State v. Haarala, 398 So.2d 1093, 1097 (La.1981). (Emphasis added).
In the present case, Agent LaMulle's statement explained how the police originally came to investigate the defendant. We find that the statement was not offered for the purpose of depicting defendant as a bad person but merely to "complete the story of the crime on trial by proving its immediate context of happenings near in time and place." State v. Brewington, supra. Agent LaMulle's testimony did not constitute proscribed "other crimes" evidence, and was properly admitted. Consequently trial counsel's failure to object cannot constitute deficient performance under the first prong of the Strickland test.
*77 Moreover, the wrongful admission of other crimes evidence is subject to the harmless error analysis. State v. Johnson, 94-1379, p. 17 (La.11/27/95), 664 So.2d 94, 102, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332; State v. Girod, 96-660 (La.App. 5th Cir. 11/25/97), 703 So.2d 771, writ denied, 98-0244 (La.6/16/98), 719 So.2d 480. Similarly, hearsay is subject to the harmless error rule. State v. Wille, 559 So.2d 1321, 1332 (La.1990), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The proper analysis for determining harmless error is "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." State v. Phillips, 94-673, p. 15 (La.App. 5th Cir. 3/1/95), 659 So.2d 785, 792; Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La. 1993), appeal after remand, 96-0593 (La. App. 4th Cir. 1/29/97), 688 So.2d 1245, writ denied, 97-0538 (La.9/5/97), 700 So.2d 504; State v. Code, 627 So.2d 1373 (La.1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491 (1994).
The jury in the instant case heard testimony that another police officer found drugs in defendant's possession during an investigatory stop, that cocaine, marijuana, and a gun were found in the defendant's bedroom and that the defendant admitted that the drugs belonged to him. In light of this other evidence presented in this case, even if we found that Agent La-Mulle's testimony constituted inadmissible other crimes evidence, or was hearsay, such admission was harmless, and trial counsel was not ineffective for his failure to object.
The defendant further argues that trial counsel's failure to object to the admission of the contents of the black bag constituted ineffective assistance of counsel. Defendant claims that the evidence was inadmissible because it was irrelevant to the offense charged, possession of a weapon while in possession of a controlled substance, and it was an impermissible reference to "other crimes," specifically dealing drugs.
During trial the following exchange took place between the assistant district attorney and Agent LaMulle.
PROSECUTOR (Ms. Miller):
Did Mr. Williams point out any other items in the room?
WITNESS (Agent LaMulle):
No. The second item that was found in the bedroom was actually located by Agent Valley.
PROSECUTOR:
And what was that item?
WITNESS:
It was a black bag containing several items. Would you like me to read them off?
PROSECUTOR:
Yes.
WITNESS:
Okay. Two empty boxes of sandwich bags, one full box of sandwich bags, one hand-held strainer, on Ohaus triple beam scale, one metal spoon containing white powder residue, one metal knife with a black handle, and several loose clear plastic bags were located on the bedroom floor.
Defendant argues that his counsel should have objected to this testimony as irrelevant to any of the elements of the charged offense, possession of a weapon while in possession of a controlled dangerous substance.
In this case although the contents of the black bag could be construed as evidence of the crime of drug distribution, these items are also consistent with possession of drugs, an element of the crime with which he is charged. Further, defendant testified that he used the items in the bag to weigh cocaine when he bought it. Therefore, the evidence regarding the contents *78 of the bag had independent relevance probative of defendant's possession of drugs. The evidence was admissible under LSA-C.E. art. 404(B). Thus, trial counsel's failure to object, or file a motion in limine, or move for a mistrial was not deficient performance because the testimony was properly admitted as evidence.
The record indicates that when the prosecutor attempted to question defendant about whether he was a drug dealer, trial counsel objected on the grounds of relevance. The objection was overruled by the trial judge and defendant explained that he used the items to weigh cocaine for his personal use after it was purchased. Considering the facts of the present case we cannot say that trial counsel was deficient.
This assignment of error is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
In this case the trial court failed to impose a mandatory fine as required under LSA-R.S. 14:95 E. The sentence is illegally lenient. The defendant alone has appealed and the state failed to object at trial and has not raised the issue in its brief. The appellate court will not amend or set aside an illegally lenient sentence on its own motion when the defendant alone has appealed and the prosecutor has not sought review of the sentence. State v. Fraser, 484 So.2d 122 (La.1986); State v. Bradford, 95-929, 95-930, (La.App. 5th Cir. 6/25/96), 676 So.2d 1108.
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
NOTES
[1] Defendant filed a second Motion to Quash shortly before trial.