781 So.2d 575 (2001)
STATE of Louisiana
v.
Allison HODGE and Roger Hodge.
No. 2000-KA-0515.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2001.
*577 Harry F. Connick, District Attorney for Orleans Parish, Juliet Clark, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff/Appellee.
William R. Campbell, Jr., Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant-Allison Hodge.
Yvonne Chalker, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant-Roger Hodge.
Court composed of Judges BAGNERIS, TOBIAS and GORBATY.
BAGNERIS, Judge.

STATEMENT OF THE CASE
Defendants, Allison P. and Roger Hodge, were charged by bill of information on May 16, 1997 with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1). Roger Hodge pleaded not guilty at his July 31, 1997 arraignment. Allison Hodge pleaded not guilty at her August 1, 1997 arraignment. The trial court denied defendants' motion to suppress the evidence on March 11, 1998. On September 16, 1998, a twelveperson jury found Roger Hodge guilty as charged, and Allison Hodge guilty of attempted possession of marijuana.
On October 8, 1998, the trial court denied defendants' motion for new trial. After defendants waived all legal delays, the trial court sentenced Allison Hodge to ninety days in parish prison, suspended, and six months active probation with special *578 conditions. Roger Hodge was sentenced to five years at hard labor, suspended, and five years active probation with special conditions. The trial court granted defendants' motion for appeal.

FACTS
New Orleans Police Detective Jeffrey Robertson testified that in January 1997 he began an investigation of narcotics activity in a plant shop located at 2267 St. Claude Avenue. Det. Robertson said that on January 14, 1997, he met with a confidential informant, who was given money to purchase marijuana. Det. Robertson observed the informant walk into the building and come out with marijuana. He admitted the informant had been paid to make the purchase. Det. Robertson applied for and obtained a search warrant, dated January 14, 1997, for those premises, but was not present when the warrant was executed.
New Orleans Police Detective Clarence Gillard testified that on January 17, 1997, he participated in the execution of a search warrant at 2267 St. Claude Avenue. He and other officers, Dets. Dwight Rousseve and Michael Lohmann, and Sgt. Steven Imbraguglio, found the defendants and a white female present. He found a burgundy sweatshirt and a pair of corduroy pants inside of a clothes dryer that was sitting outside the back door in the rear yard. A one-pound bag of marijuana was inside of the sweatshirt, and a triple-beam scale was inside of the pants. The clothes dryer was located some five to ten feet from the back of the building. The officer stated that the front of the building contained a plant shop, the rear, living quarters a kitchen, a room with a sofa, a bedroom and a bathroom. He learned that defendants resided in the living quarters of the building. Det. Gillard testified that the police canine alerted to a jacket found in the bedroom where some marijuana was found. He said the door of the dryer had been closed, and that one could not tell anything was inside of it. He also admitted that he would not have been able to tell what was inside of the clothes without unwrapping them. The dryer was un-plugged and was located at the rear of an alley, behind the building. There were two Rottweilers in the backyard in a makeshift kennel. To the left of the building were two lots containing plants and plant-related items. Det. Gillard admitted that it would be easy to scale the fences surrounding the lots.
New Orleans Police Sergeant Steven Imbraguglio testified that he was the supervising officer at the search. He said Roger Hodge had marijuana on his person when searched. He further stated that marijuana was found in a carry bag owned by the white female that was also on the premises.
New Orleans Police Officer Michael Lohmann testified that when he and the other officers arrived at 2267 St. Charles Avenue to conduct the search he found the front door locked. Roger Hodge answered the door. He was searched and one plastic zip-lock bag of marijuana was found in his right jacket pocket, and another in his left jacket pocket. Roger Hodge also had $323 in his pants pockets. Officer Lohmann identified the two bags of marijuana. Inside of a kitchen cabinet he located numerous similar clear plastic zip-lock bags, along with a Louisiana Department of Revenue and Taxation bill in the name of Allison and Roger Hodge, showing an address of 2267 St. Claude Avenue. A police canine subsequently alerted on a small plastic bag of marijuana inside the pocket of a man's jacket in a rear room of the building. Two-hundred and fifty-five dollars ($255) was seized from the white female present, along with two bags of marijuana, one in a plastic bag consistent with *579 the two plastic bags found in Roger Hodge's jacket pocket. He stated that the backyard had a lot of debris, along with Christmas trees and some plants. He did not recall whether the dryer was plugged into anything, and said it was several feet from the rear door.
New Orleans Police Det. Dwight Rousseve searched the white female's bag, and found two clear plastic bags of marijuana inside.
The parties stipulated that if John Palm, New Orleans Police Department Criminologist, was to testify he would state that "the quantity of the marijuana in total weighed 492.6 grams," and that it in fact tested positive for marijuana.

ERRORS PATENT
A review of the record reveals no errors patent.

ALLISON HODGE'S ASSIGNMENT OF ERROR
By her sole assignment of error, Allison Hodge claims the evidence was insufficient to sustain her conviction for attempted possession of marijuana.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4th Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
*580 To convict for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Lewis, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, 1027; State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession, i.e., the exercise of dominion and control over the drugs, is sufficient to support conviction. Id. "A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it." State v. Booth, 98-2065, p. 5 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 742. Neither the mere presence of a defendant in an area where drugs have been found nor the mere fact that she knows the person in actual possession is sufficient to prove constructive possession. State v. Bell, 566 So.2d 959 (La.1990); State v. Hookfin, 601 So.2d 320, 322 (La.App. 4th Cir.1991), writ granted on other grounds, 596 So.2d 536 (La.1992). Additionally, simply being a resident of premises where drugs are found is not in and of itself sufficient to prove constructive possession. State v. Collins, 584 So.2d 356, 360 (La.App. 4th Cir.1991). Factors to be considered in determining whether a defendant exercised dominion and control over drugs are: the defendant's knowledge that illegal drugs were present in the area, the defendant's relationship with the person in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use, the defendant's proximity to the drugs, and evidence that the area was being frequented by drug users. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130,1133; State v. Mitchell, 97-2774, p. 12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328.
Defendant was convicted of attempted possession of marijuana; the jury found that she had the specific intent to commit the crime of possession, and did an act for the purposes of and tending directly toward the accomplishing of that object. La. R.S. 14:27, La.R.S. 40:966(A)(1).
Because a state tax bill was sent to Allison Hodge and her husband, Roger Hodge, at the address where the drugs were found, it can be inferred that the property was leased or owned by the defendants. Marijuana and a weighing scale were found wrapped in clothing, inside of a dryer located in the back yard of the building; defendant and her husband had equal access to this dryer. However, no marijuana was seized from Allison Hodge's person, and there was no direct evidence that she knew any marijuana was in the building in her husband's possessionor in the dryer outside. There is no evidence that any marijuana was in close proximity to Allison Hodge when police arrived, aside from the two bags of marijuana in her husband's jacket pockets, and the two bags in the white female's personal pouch or bag. A drug-detecting canine discovered a fifth bag of marijuana in a man's jacket located in the building's living quarters. None of the marijuana seized was within open view of Allison Hodge.
One of the bags of marijuana possessed by the white female was similar to the two bags found on Roger Hodge's person, and these types of plastic bags were found in a kitchen cabinet in the living quarters of the building. Consequently, there was the suggestion that the white female had purchased marijuana from someone in the building. Police testimony suggested that a confidential informant had purchased marijuana from someone in the Hodges' building two days before they were arrested. However, there was no evidence presented indicating recent drug use inside of *581 the building, either in the front plant store or the rear living quarters, nor was there any evidence that police found any drug paraphernalia related to marijuana use anywhere in the building.[1]
In State v. Martin, 98-1507 (La.App. 4 Cir. 4/5/00), ___ So.2d ___, 2000 WL 528072, the defendant was arrested after a police pursuit, during which he discarded two bags of cocaine. Later, police went to a residence, where the defendant's wife answered the door. She gave consent to search the residence, and police found two bags of cocaine, currency, and drug paraphernalia there. There were men's clothes in the residence, but no proof that the defendant resided there, such as mail addressed to him. For that reason, this court found the evidence insufficient to sustain the defendant-husband's conviction for possession of the cocaine found in the residence. Implicit in the finding was that the evidence would have been sufficient to convict defendant for possession of that cocaine if there had been proof he resided there.
In State v. Maresco, 495 So.2d 311 (La. App. 4th Cir.1986), writ denied, 500 So.2d 419 (La.1987), police served a search warrant on an apartment where Lori Wermuth and her fiancé, Gary Weaver, resided. Wermuth was at work when the warrant was served, but Weaver and Steven Maresco were in the apartment. Police found seven pounds of marijuana packaged in large and small plastic bags in the kitchen and on the dining room table, and a vinyl bag inside of a closed trunk in the bedroom containing over six thousand Valium pills. A scale was also recovered, along with mail addressed to Wermuth. In affirming Wermuth's conviction for possession with intent to distribute marijuana, this Court found that even though Wermuth was not home when the warrant was executed, the marijuana was seized in her apartment, and it was a reasonable conclusion that she exercised sufficient control over the marijuana. This Court also affirmed Wermuth's conviction for attempted possession of the Valium pills, finding they had been in her constructive possession because they were found in her bedroom.
In State v. Hookfin, 601 So.2d 320 (La. App. 4th Cir.1991), this court found that the mere fact that the defendant resided at the location where drugs were found did not in and of itself establish constructive possession. However, the fact of residence, coupled with an undercover police officers' testimony that the defendant flushed cocaine down the toilet immediately before other officers arrived, was sufficient to establish that the defendant had dominion and control over other cocaine found in the kitchen of the residence. See also State v. Collins, 584 So.2d 356 (La. App. 4th Cir.1991) (being a resident of premises where drugs are found is not in and of itself sufficient to prove constructive possession).
In State v. Allen, 96-0138 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, police observed three brothers, Kenner, Ennis and Roosevelt Allen, at one time or another, all engage in apparent street drug sales. On one occasion Kenner reached into the trunk of a vehicle, later determined to belong to him, and retrieved small objects, which he then handed to Roosevelt. After the brothers were arrested, a search of the vehicle revealed heroin, cocaine, marijuana and syringes. Roosevelt and Ennis were tried and found guilty of possession of the *582 cocaine found in Kenner's vehicle. On appeal, this court held that the evidence was sufficient to establish that Roosevelt and Ennis were "runners" for their brother, Kenner, and both had dominion and control constructive possessionover the cocaine found in Kenner's vehicle.
In State v. Booth, 98-2065 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, a confidential informant purchased drugs from a female in the doorway of an apartment. A drugdetecting canine subsequently found twenty-seven foil packages of heroin inside of a wall-mounted heater in the apartment. Five additional foil packages of heroin, along with a syringe, were also found in a large felt hat on top of a curio cabinet. Both the heater and curio cabinet were located in the living room, where the defendant, a male, was seated when police entered. The defendant lived in the apartment, and the female was his fiancée. He claimed he did not know anything about the drugs, and said his fiancée did not live there, but was staying there only that one particular night. However, a letter was found in the apartment addressed to both. This court found the evidence sufficient to establish the defendant's dominion and control over the heroin found in the apartment.
In the instant case, we find that the evidence is insufficient to sustain Allison Hodge's conviction insofar as the marijuana found in the pockets of either the jacket her husband was wearing when police arrived, the man's jacket in the living area of the building, or the marijuana found in the white female's bag. There is simply no evidence that she exercised dominion and control over any of those five bags of marijuana.
Therefore, after viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Allison Hodge would have had to have known that her husband was selling marijuana from the residence. However, it would be too speculative for any rational trier of fact to conclude that she knew of, or had dominion and control over, the marijuana inside of the unplugged dryer located in the cluttered backyard. The one-pound of marijuana found in the dryer was in a large bag, apparently in bulk form. There was no indication it had been packaged for retail sale in plastic bags such as those found in the kitchen. If the marijuana had been packaged, it might suggest that it had been brought inside of the building at some point, and would perhaps indicate that Mrs. Hodge would have known about it. As it is, if Roger Hodge was selling the marijuana, he could have recently brought this bag of marijuana onto the property and deposited it in the dryer, planning to package it later, all unbeknownst to Mrs. Hodge. This is all speculation. However, so is the conclusion that Allison Hodge had knowledge of and exercised dominion and control over the marijuana. "[T] he jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." State v. Tong, 609 So.2d 822, 825 (La.1992), quoting State v. Mussall, 523 So.2d 1305, 1311.
The instant case is distinguishable from Maresco, supra, in that there seven pounds of marijuana were found in the kitchen and on the dining room table of the defendant's apartment, and the large quantity of Valium pills were found in a trunk in her bedroom. In Martin, supra, also, the drugs and paraphernalia were found inside of the residence, as was the case in Booth, supra.
Viewing all of the evidence in a light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that Allison Hodge *583 exercised dominion and control over any of the marijuana found during the search, or that she attempted to do so.
There is merit to this assignment of error. Accordingly, we reverse Allison Hodge's conviction and sentence.

ROGER HODGE'S ASSIGNMENT OF ERROR
In Roger Hodge's sole assignment of error, he claims the trial court erred in denying his motion to suppress the evidence, claiming the warrant was issued without sufficient probable cause, and that the warrant was stale when it was served.
The Louisiana Supreme Court set forth the applicable law in State v. Casey. 99-0023 (La.1/26/00), 775 So.2d 1022, as follows:
A person is constitutionally protected against unreasonable search and seizure of his house, papers and effects. Thus, a search and seizure of such shall only be made upon a warrant issued on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and thing(s) to be seized. U.S. Const. Amend. IV; La. Const. art. I, § 5 (1974). The general rule is that probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." La. C.Cr. P. art. 162; State v. Johnson, 408 So.2d 1280, 1283 (La.1982). The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exits that the evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Weinberg, 364 So.2d 964, 968 (La.1978). Further, an affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
The defendant bears the burden of proving that the evidence should be suppressed. La. C.Cr.P. art. 703(D). A trial court's ruling on a motion to suppress the evidence is entitled to great weight because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Minis, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
In the instant case, the search warrant application, the warrant itself and the return on the warrant is not contained in the record.[2] La. Const. Art. I, § 19 provides that "[n]o person shall be subjected to imprisonment ... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based." However, it is possible, depending on the circumstances, to render a complete appellate review of a conviction and sentence, even when there are missing *584 portions of the trial record. See State v. Mims, 97-1500 (La.App. 4 Cir. 6/21/00), 769 So.2d 44.
Roger Hodge does not make any argument concerning the absence of the search warrant application, the warrant itself, or the return on the warrant. Rather, he simply argues that the application did not provide sufficient facts to establish probable cause that there was and would be contraband at 2267 St. Claude Avenue. He concedes that the application contained a reference to a confidential informant who had previously provided information leading to an "arrest." He also mentions in his brief allegations by the informant that he delivered large quantities of marijuana in an old truck, and that he had sold him marijuana in the past. However, he does not state that this information was contained within the four corners of the search warrant application. Finally, he stated that Det. Robertson conducted surveillance and observed several people "coming and going." Again, defendant does not admit that this information was contained within the four corners of the search warrant application. While Det. Robertson testified that the informant was given money, went into 2267 St. Claude Avenue, and came out with marijuana he claimed to have purchased from Roger Hodge, nowhere is there any affirmative evidence that this information was put into the search warrant application. Nor is there an admission by Roger Hodge that this information was placed into the application. While it is probable that Det. Robertson put all of this information into the search warrant application, it is impossible to make that determination without review of the search warrant application.
Nevertheless, as previously stated, Roger Hodge makes no argument as to the missing search warrant application, but simply avers that the information contained therein was insufficient to establish probable cause. He makes no allegation that Det. Robertson misled the issuing magistrate, and the detective's cross examination by defense counsel during both the motion to suppress hearing and at trial does not suggest in any way that he attempted to mislead the Magistrate.[3] Although, he apparently questions the reliability of the confidential informant who's past information led to an arrest, with no reference to any conviction, he does not suggest that Det. Robertson misled the magistrate in this regard. Det. Robertson freely admitted that he only knew of arrests made as a result of information provided by the informant, not convictions. He does not make any argument that the officers who served the warrant were acting other than in "good faith," and the evidence in no way suggests any bad faith on the part of those police officers. Therefore, the evidence would have been admissible under the "good faith" exception enunciated in U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), regardless of whether the application had set forth sufficient probable cause. In Leon, the U.S. Supreme Court held that evidence seized pursuant to a search warrant issued without sufficient probable cause need not be suppressed if the officers who executed it believed it had been validly issued. See State v. Shortridge, 98-2060, pp. 4-6 (La.App. 4 Cir. 12/22/99), 750 So.2d 339, 341-342. There is no suggestion that the police officers that served the search warrant believed anything other *585 than that they were serving a validly issued search warrant. Accordingly, Roger Hodge failed to prove that the evidence seized pursuant to the search warrant should have been suppressed for lack of probable cause.[4]
Roger Hodge argues that the evidence should have been suppressed because the warrant, issued on January 14, was stale by the time it was served on January 17. La.C.Cr.P. art. 163 states that "[a] search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance."
A warrant may become stale if facts and circumstances at the time of its execution show that probable cause no longer exists. State v. Ogden, 391 So.2d 434, 437 (La.1980) (citing State v. Gilbert, 354 So.2d 508, 513 (La.1978)). Thus, "staleness is only an issue when the passage of time makes it doubtful that the object sought in the warrant will be at the place where it was observed." State v. Tate, 407 So.2d 1133, 1137 (La.1981).
Casey, 99-0023 at p. 4, 775 So.2d at 1028.
In the instant case, Roger Hodge assumes the following facts: (1) a paid confidential informant gave Det. Robertson information "within several days of January 14, 1997" concerning alleged sales of marijuana from 2267 St. Claude Avenue; (2) a controlled buy was reportedly made on January 14, 1997; (3) a search warrant was issued on that same date, January 14, 1997; and (4) the search was conducted on January 17, 1997.
In State v. Stewart, 92-2536 (La.App. 4 Cir. 12/15/94), 648 So.2d 15, a reliable informant informed a police officer on July 14, 1987 that a black male known as "Crippled Leo" was selling heroin from a particular address. The officer arranged for the informant to purchase heroin from "Crippled Leo" on that date, and subsequently obtained a search warrant on July 16, 1987. The warrant was not served until July 24, 1987. This court held that the above information was sufficient to warrant a man of reasonable caution to believe that heroin would be found on the premises "eight days" after the issuance of the warrant. The court stated, as defendant in the instant case does in his brief on appeal, that "[t]he determining factor is whether the probable cause recited in the affidavit continues until the time of execution of the warrant." 92-2536 at p. 3, 648 So.2d at 17.
In the instant case, the controlled purchase of marijuana was made, according to Det. Robertson, near dusk on July 14. The search warrant was obtained that same date, presumably after the controlled buy, and it was served on July 17, second day after it was issued. While Roger Hodge makes the conclusory argument that there was "no reason" to believe that marijuana would be found on the day the warrant was served, the facts admitted by him are very similar to the facts in Stewart, supra. He makes no argument concerning the missing search warrant application/affidavit. The burden is on defendant to show staleness. The facts admitted by Roger Hodge are sufficient to warrant a man of reasonable caution to believe that marijuana would be found on the premises on the third day after the issuance of the search warrant.
There is no merit to this assignment of error.

*586 CONCLUSION

For the foregoing reasons, Allison Hodge's conviction and sentence is reversed. Roger Hodge's conviction and sentence is affirmed.
ALLISON HODGE'S CONVICTION AND SENTENCE REVERSED.
ROGER HODGE'S CONVICTION AND SENTENCE AFFIRMED.
TOBIAS, J., concurs.
GORBATY, J., dissents in part.
TOBIAS, J., concurring.
I agree with the result of the affirmation of Roger Hodge's conviction. The finding of marijuana on his person coupled with the other circumstances shows that he violated the law. No error relates to his conviction and sentence.
I respectfully concur in the reversal of Allison Hodge's ("Allison") conviction for the following reasons:
Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) requires an appellate court to determine whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. In this case I question how much one can assume and infer from the mere fact that two individuals are husband and wife.
In this case, no direct evidence links Allison to the marijuana found. The circumstantial evidence is so extraordinarily weak that I find as a matter of law such does not reach the level of proof of guilt beyond a reasonable doubt.
I find State v. Maresco, 495 So.2d 311 (La.App. 4 Cir.1986), writ denied, 500 So.2d 419 (La.1987), especially persuasive as to why Allison cannot be convicted in this case. The majority fails to address that which I regard as the gravamen in Maresco, namely, that Maresco's conviction was reversed because no evidence showed that he lived on the premises where the drugs were found or that he knew that the diazepam was in the bedroom.
First, the tax bill from the Louisiana Department of Revenue and Taxation issued to the Hodges, addressed to them at 2267 St. Claude Avenue ("the premises"), and found on the premises does not prove that Allison lived at or worked at the premises. The tax bill is not found in the record having apparently been lost by the clerk's office of the Criminal District Court. Thus, we do not know what type of tax bill it was and what tax period it covered. (How recent was it?)
Second, no marijuana was found on Allison. No evidence shows she knew marijuana was in the building, in the dryer, on her husband's person, in the pocket of the man's jacket in the closet, or in the bag of the Caucasian female on the premises.
Third, no fingerprints were taken from the bags of marijuana, the scale, or from anything in, on or about the premises.
Fourth, no evidence shows that Allison worked in the plant shop located in the front portion of the premises. No evidence shows that she resided in the apartment portion of the premises. No evidence shows that any woman's clothing was found in the residential portion of the premises. (The photographs of the premises introduced in evidence have also been lost; they might have shown women's clothing, but this court cannot determine if such is the case because no one testified as to the types of clothing in the closet.) In the absence of such evidence in the record, one cannot presume that she resided with her husband in the premises.
*587 Fifth, no evidence establishes that the confidential informant identified a female on the premises handling marijuana.
Sixth, no evidence was presented to show that any marijuana had been used inside or outside the premises. No drug paraphernalia was found about the premises.
Seventh, evidence that the Hodges were living in the premises together was introduced over defense counsel's objection. The evidence came from a police officer testifying to the conclusion, but no foundation was laid to his conclusion support as to that proffered fact. The officer stated his conclusion over the objection of defense counsel without enunciating how he came to the conclusion.
Eighth, all evidence points to Roger Hodge running the plant business. Ergo, one should presume he ran the marijuana "business."
Ninth, Allison was only physically observed in the business portion of the premises. The record is silent as to whether she was behind a counter (which would imply she was conducting business on the premises.) No evidence is presented to show she had access to the residential portion of the premises.
Finally, in these day of varying definitions of what constitutes a "family" and of what precisely a marriage means other than a civil contract, I cannot say that merely being husband and wife is sufficient to show that Allison is guilty of attempted possession of marijuana. It is equally possible that Allison was coincidentally on the premises at the moment the police arrived. She could have been separated and there to merely converse with her estranged husband. She could have been there to collect alimony. The prosecution has the burden to call someone (such as a neighbor) to say that Allison lived or worked on the premises. A police officer could have testified (but did not) that women's clothing was on the premises. Although I recognize that one might ask why Allison did not call a witness to testify that she did not live or work on the premises, one must remember that a defendant has a burden to show nothing when the prosecution omits an essential element of its case. A defendant can rely upon the prosecution's burden to prove directly or by clear inference that he or she has violated a law. And not every individual has a friend who can attest to some facts; this world has shy people and private people whose lives few, if any, know anything about.
The burden of proof in this case was on the State and it, in essence, failed to prove every element of its case against Allison.
GORBATY, J., dissenting in part.
I respectfully dissent in part. Although I agree with the majority opinion as it affirms the conviction of Roger Hodge, I disagree with the reversal of the conviction of Allison Hodge. After reviewing the facts of the case, I believe that under the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence presented was sufficient for a jury to convict Allison Hodge of attempted possession of marijuana. For these reasons, I would affirm the conviction and sentence of both defendants.
NOTES
[1] The application for the search warrant, the search warrant, and the return are missing from the record, and cannot be located.
[2] However, some information set forth in defendant's brief on appeal suggests that his appellate counsel had access to the search warrant application or a copy thereof.
[3] See State v. Brown, 93-2089, p. 6 (La.App. 4 Cir. 12/15/94), 647 So.2d 1250, 1253, writ denied, 95-0497 (La.12/6/96), 684 So.2d 921 (An affidavit supporting a search warrant is presumed to be valid, and the defendant has the burden of proving that the representations in it are false).
[4] But see State v. Young, 99-880 (La.App. 5 Cir. 1/12/00), 751 So.2d 364 (in a case where the search warrant affidavit was missing from the record, and there was a question of the informant's reliability, the 5th Circuit "conditionally affirmed" the defendant's conviction and sentence, but remanded for reopening of the hearing on the motion to suppress).