829 So.2d 530 (2002)
STATE of Louisiana
v.
Stacey HINES.
No. 02-KA-397.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2002.
*531 Bertha M. Hillman, Louisiana Appellate Project, Thibodaux, LA, for defendant-appellant, Stacey Hines.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, (Appellate counsel), Assistant District Attorneys, Gretna, LA, for plaintiff-appellee, the State of Louisiana.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
Stacey Hines appeals her conviction by a jury of attempted possession with intent to distribute marijuana. She contends that there was insufficient evidence to support the conviction and that the trial court erred in allowing the introduction of the Boykin transcript and minute entry of a co-defendant's aborted plea proceeding. We affirm the conviction, but remand with an order for correction of certain clerical errors.
On July 10, 2001 Stacey Hines and five others (Leviticus Floyd, Kioca Hines, Michelle Hines, Ronald L. Polk, Jr., and Darryl A. Robinson) were charged in one bill of information with violation of La.R.S. 40:966(A), possession of marijuana with intent to distribute. Stacey Hines, Leviticus Floyd and Ronald Polk were tried before a twelve-member jury on December 10 through 13, 2001. On December 13, 2001 the jury returned a responsive verdict, finding Hines and Floyd guilty of attempted possession with intent to distribute *532 marijuana and finding Polk guilty of attempted possession of marijuana.
On January 16, 2002 the district attorney filed a bill of information charging Stacey Hines with being a second-felony offender under the Habitual Offender Law, La.R.S. 15:529.1, to which she pleaded guilty.[1] Under the multiple offender conviction the defendant was sentenced to seven years, six months at hard labor in the custody of the Department of Corrections, with credit for time served.

FACTS
The testimony at trial established the following facts:
On June 11, 2001, at approximately 8:11 p.m., officers of the Jefferson Parish Sheriff's Office executed a search warrant on Stacey Hines' apartment in Harvey. Narcotics Agents Jeff Heggelund, Bruce Harrison, and Anthony Synigal described the events.
Agent Heggelund testified that the officers knocked on the apartment door but received no response. They discovered the door was not locked, whereupon the officers entered the apartment, yelling, "Police, search warrant." As they entered Heggelund noticed there was a sectional sofa in the living room with a number of people sitting on it and there was a juvenile female sitting on a chair. One of the occupants, whom Heggelund identified at trial as Leviticus Floyd, stood up and ran up the stairwell. The other people remained downstairs. Heggelund followed Agent Harrison upstairs in pursuit of Floyd.
Heggelund said the main activity when the officers arrived appeared to be an assembly line for packaging marijuana for resale. He said they did not arrest the juvenile female because she was sitting separated from the main activity. Heggelund was unsure which position on the sofa Stacey Hines occupied when they entered.
Heggelund identified, as evidence seized at the scene, numerous plastic bags the officers found on the sofa. He explained that the reason for the plastic bags is to package marijuana or other types of drugs. He said distributors usually cut off the corners of ordinary sandwich bags to make small bags to hold marijuana, because the cut-off corners are the right size for the amount of marijuana to be sold. Once the marijuana is placed inside, the cut-off corners are rolled and their ends tied together to make little packages. He said that when police entered the apartment, it appeared the occupants were cutting corners off of sandwich bags and packaging small amounts of marijuana into those bags from a larger bag of marijuana. They found the plastic bags stuffed a little down into a corner of the curve of the sectional sofa.
Heggelund also identified the larger bag from which he said the occupants were taking marijuana to place into the smaller bags, as well as 18 small bags of marijuana (packaged in cut-off corners) that had been placed in a sandwich bag. According to Heggelund, the cost of the small packages of marijuana is five to ten dollars, depending on the amount that goes into the bag.
Heggelund further identified remnants of partially-smoked marijuana cigars, known as "blunts", in an ashtray atop the sofa, a blunt found on the floor, and a digital scale, which he said is used to measure larger quantifies of drugs, such as the marijuana in this case. He said the scale *533 was found inside a breadbox in the kitchen.
Heggelund said the officers found money in two places in the apartment, $85.00 in cash seized from the floor in the living room and $246.00 in cash found in an upstairs bedroom drawer. He stated that when police seize cash in a drug raid, they are looking for denominations of currency that would indicate proceeds of sales of the drugs, in this case five- and ten-dollar bills. Here, the $85.00 consisted of four twenty-dollar bills and five one-dollar bills. The $246.00 was made up of five twenty-dollar bills, three ten-dollar bills, 11 five-dollar bills, and 61 one-dollar bills. Agent Heggelund believed both quantities of cash represented proceeds from drug sales.
Finally, Agent Heggelund identified photographs of the scenes showing the layout of the apartment and the seized contraband in place where it was found.
Heggelund admitted he did not know the order in which the people were sitting on the sofa, nor did he see them holding anything, putting anything down, or smoking anything. He was unable to identify what, if any, position or "job" on the "assembly line" any of the defendants had. There were no scissors seized at the scene.
Thomas Angelica, a forensic scientist with the Jefferson Parish Sheriff's Office, was accepted as an expert in the examination and analysis of controlled dangerous substances. He testified that the contents of the exhibits at trial tested positive for marijuana (specifically, two partially burned hand-rolled cigarette butts, one partially burned cigar, one sandwich bag containing 18 knotted clear plastic bags, and one large Ziploc bag). He stated that the total weight for the 18 bags of marijuana was 31.8 grams and the large bag of marijuana weighted 122.9 grams.
Sergeant Bruce Harrison testified that on the night of the arrests, he was working with a team consisting of Detectives Synigal and Heggelund, Sergeant Jason Renton, and Detective Dawn Gentiner. Harrison said they approached the door to the apartment and knocked. There were sounds from inside, either a television or a stereo, and he could hear talking. He knocked and announced police presence. Not getting a response, he tried the door handle and found it was unlocked. He pushed the door open and announced, "Police with a search warrant."
When Harrison got to the end of the entry hall, in the living room area, he saw Leviticus Floyd go over the sofa and hit the stairs. He noticed there were several people along the sofa and he scanned them quickly to make sure he could see their hands. Seeing no weapons or movement, he went up the stairs after Floyd. He followed Floyd through a bedroom and a bathroom into a second bedroom, where Heggelund and Renton (who had followed Harrison up the stairs) apprehended Floyd.
Harrison said that when he returned downstairs, he noticed there were seven people in the housesix adults and one juvenile.
Harrison corroborated Heggelund's testimony regarding the purpose and use of the plastic bags and cut-off corners, as well as the street prices of the marijuana. He said the total of the marijuana recovered was a little over a quarter of a pound, or 150-160 grams. Purchased as one quantity, a quarter-pound of marijuana has a street value of $200 to $300. Repackaged into one gram to one-and-a-half gram packages such as the ones in evidence, it would make 100 to 150 packages, each of which would sell for five to ten dollars, depending on what the dealer paid and *534 what the market value is at the time, and would net a profit of about $450.
Harrison testified that fingerprinting of the plastic bags was not requested in this case because he does not ask for fingerprints when he knows who the perpetrator is.
Agent Anthony Synigal testified he was second in the door in executing the warrant. They went in yelling, "Sheriff's office, search warrant." Synigal saw Ronald Polk standing in a corner near the sofa in the living room and the stairway, and saw Leviticus Floyd running upstairs. Officers Harrison, Heggelund and Renton followed Leviticus up the stairs.
Synigal said that Stacey Hines was on the end of the sofa with a blunt in her hand. She threw the blunt to the floor when the police entered. Synigal said the others on the sofa were Darryl Robinson, Kioca Hines and Michelle Hines.[2] The officers secured everybody and got them on the floor, except for Stacey, who was pregnant at the time. Synigal said the residence was occupied by Stacey and Leviticus and that it appeared all the people had been taking part in bagging up marijuana. Synigal testified he believed that Michelle Hines was holding the bag containing the marijuana.
After the State rested, the defendants moved to have the transcribed testimony of Kioca Hines' attempted guilty plea read to the jury. The record reflects that at the prior hearing Kioca admitted she brought approximately one-half pound of marijuana and some Baggies to Stacey's apartment. Kioca stated that she did not remove the marijuana from her purse and begin packaging it until Stacey went to the bathroom. Kioca said that Stacey began "complaining" about the marijuana when she returned to the living room. According to Kioca, Stacey did not know that Kioca had the marijuana until Stacey returned from the bathroom.
Kioca said she had just given Stacey and Michelle Hines a "joint" to smoke, when the police "busted in the door." Kioca said that she was planning on selling some of the marijuana and smoking some of it. According to Kioca, no one else in the apartment helped to package the marijuana. Kioca further said that the money taken from the apartment was rent money and belonged to Stacey.
The record reflects that the trial judge had refused to accept Kioca Hines' guilty plea because Kioca admitted to using marijuana within seventy-two hours of the hearing. A minute entry in connection with the failed guilty plea and Kioca Hines' Waiver of Rights form were also introduced as defense exhibits.

ASSIGNMENT OF ERROR NO. 1
The evidence on which the State relied was the note of evidence taken at the guilty plea proceedings of defendant's sister, Kioca Hines. Kioca was unavailable to testify at Stacey's trial.[3] In the note of evidence from Kioca's plea proceeding, Kioca testified that she brought the marijuana to Stacey's apartment and that she was the only one bagging the marijuana. Kioca also testified that when Stacey became aware that Kioca had brought the marijuana in, Stacey complained about it. Further, none of the officers saw Stacey packaging any drugs. Stacey was simply sitting on the sofa smoking a marijuana cigar. Stacey argues *535 that a reasonable hypothesis of innocence is that Kioca Hines, who admitted to ownership of the marijuana, was the only person guilty of possession with intent to distribute marijuana.
Stacey contends her conviction should be reversed for insufficient evidence and that she should be discharged from custody, because a reversal for insufficient evidence invokes the double jeopardy provisions of La. Const. Art. I, Section 15 and U.S. Const., Amends. V and XIV, to prohibit a retrial of the defendant.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
Defendant was convicted of attempted possession with intent to distribute marijuana. An attempt is defined in La.R.S. 14:27, which provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
. . . .
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
Thus, the State had to prove not only that the defendant had the specific intent to possess marijuana with the intent to distribute it, but also that defendant did an act or omitted to do an act "for the purpose of and tending directly toward the accomplishing of [her] object." La.R.S. 14:27; 40:966(A).
Specific criminal intent exists "when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Deal, 00-0434 (La.11/28/01), 802 So.2d 1254, 1260; State v. Chattman, 01-556 (La.App. 5 Cir. 10/30/01), 800 So.2d 1043, 1048.
Factors that may give rise to a reasonable inference of the specific intent to distribute a controlled dangerous substance are set out in State v. Hearold, 603 So.2d 731, 735 (La.1992), as follows:
(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
It appears that the focus of defendant's argument, although not clearly articulated in defendant's brief, is that the State failed to prove that she attempted to possess the marijuana.
*536 The element of possession includes both "actual" and "constructive" possession. State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1331; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 69, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. A person who is not in physical possession of drugs may have constructive possession when the drugs are under that person's dominion or control. State v. Williams, 735 So.2d at 69.
Guilty knowledge is an essential element of the crime of possession of contraband; such knowledge may be inferred from the circumstances. State v. Riley, 587 So.2d 130, 133 (La.App. 2 Cir. 1991). The mere presence of the defendant in the area where a controlled dangerous substance is found is insufficient to constitute constructive possession. State v. Williams, 735 So.2d at 69. However, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. Id.
In Williams, this Court recognized several factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession, as follows: (1) the defendant's knowledge that illegal drugs were in the area, (2) his relations with the person found to be in actual possession, (3) the defendant's access to the area where the drugs were found, (4) evidence of recent drug use by the defendant, (5) the existence of paraphernalia, and (6) evidence that the area was frequented by drug users. State v. Williams, 735 So.2d at 69.
In State v. Hodge, 00-0515 (La.App. 4 Cir. 1/17/01), 781 So.2d 575, 583,[4]writ denied, 01-0432 (La.1/25/02), 806 So.2d 666, the Fourth Circuit reversed a wife's conviction for attempted possession with intent to distribute marijuana because the evidence was insufficient to prove that she exercised or attempted to exercise, dominion and control over the marijuana. In that case, the police seized 492.6 grams of marijuana while executing a search on a building that one of the police officers testified was used as a plant shop and as living quarters. Both Mr. and Mrs. Hodge, as well as another female, were present when the search warrant was executed. The police found two bags of marijuana on Mr. Hodge, and another two bags of marijuana in a bag owned by the female. The police also found a one-pound bag of marijuana and a scale wrapped in clothing, inside of a clothes dryer located in the back yard. More marijuana was found in a man's jacket in the bedroom. Numerous clear plastic bags similar to those found on Mr. Hodge's person were found in a kitchen cabinet. Id. at 578-579.
The court recognized that being a resident of the premises where drugs are found is not in and of itself sufficient to prove constructive possession. State v. Hodge, 781 So.2d at 580. In reversing Mrs. Hodge's conviction, the court pointed out that there was no evidence that Mrs. Hodge knew that the marijuana was on the premises. The court noted that none of the marijuana found was within "open view" of Mrs. Hodge, that there was no evidence of recent drug use, and no marijuana was seized from Mrs. Hodge's person. Id. at 580.
In contrast, in State v. Maresco, 495 So.2d 311 (La.App. 4 Cir.1986), writ denied, 500 So.2d 419 (La.1987), the Fourth Circuit affirmed a defendant's conviction for possession with intent to distribute *537 marijuana found in her apartment. The police executed a search warrant on an apartment where defendant, Lori Wermuth, and her fiancé, Gary Weaver, resided. Weaver and another defendant, Steven Maresco, were at the apartment when the warrant was served, but Wermuth was not there. The police found seven pounds of marijuana packaged in large and small plastic bags in the kitchen and on the dining room table. Id. at 313.
In affirming Wermuth's conviction for possession with intent to distribute marijuana the court held that, even though Wermuth was not home when the warrant was executed, the marijuana was seized in her apartment and that it was a reasonable conclusion that she exercised control over the marijuana. Id.
This case appears to be more similar to Maresco than Hodge, since loose and packaged marijuana was found in open view in the defendant's apartment. In addition, the evidence seized from defendant's apartment, coupled with the officers' testimony, established the essential elements of attempted possession with intent to distribute marijuana. When the police entered defendant's apartment, defendant was seated on a sofa with several other people where a total quantity of 150 grams of marijuana was located in open view near the sofa. Nearly one-fourth (31.8 grams) of that marijuana was packaged in eighteen small plastic bags. According to Agent Synigal's testimony, defendant's sister was holding a bag containing marijuana, and defendant was holding a "blunt," which she threw to the floor upon the officers' entry.
Virtually all of the factors set out in Williams are present, leading to the conclusion that the marijuana was subject to the defendant's control. There was evidence of recent drug use, since defendant was smoking marijuana at the time the police entered the apartment, and remnants of marijuana cigars were recovered from the living room. Further, defendant is related to the person who was in actual possession, since Agent Synigal stated that he believed Michelle Hines, defendant's sister, was holding the bag of marijuana when the police entered. Defendant was in close proximity to where the marijuana and the Baggies were found. And a digital scale was found in the apartment, which Kioca Hines acknowledged that she used on this occasion to weigh the marijuana.
Although defendant points out that Kioca Hines' claim of full responsibility is a reasonable hypothesis of the defendant's innocence, the jury obviously did not believe Kioca Hines' testimony. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.
Based on the foregoing, we find that a reasonable juror could have concluded beyond a reasonable doubt that the defendant attempted to possess the marijuana with intent to distribute. Accordingly, the evidence presented at trial was sufficient under the Jackson standard to support the defendant's conviction.

ASSIGNMENT OF ERROR NO. 2
In the alternative, defendant asserts that the trial court erred in overruling defense counsel's objection to the minute entry and the Boykin[5] transcript of Kioca Hines' plea proceeding because they contained the sentence imposed on Kioca *538 Hines, which included probation. Defendant argues it was highly prejudicial to the defendant for the jurors to have information that would lead them to believe that the penalty for the charge could be a probated sentence. Defendant contends that the fact that Kioca entered a guilty plea subject to a plea bargain may have relevance to the integrity of Kioca's testimony, but the term of her sentence had no relevance to Stacey's case at all. Defendant argues that even if this Court finds the evidence relevant, it does not pass the balancing test of La.C.E. art. 403 because the evidence was more prejudicial than probative. In either event, defendant contends she is entitled to have the conviction vacated and the matter remanded for a new trial.
The State responds that the defense moved to admit the minute entry and Boykin transcript of which defendant now complains and that the evidence was properly admitted.
We note initially that, although defendant refers to Kioca Hines' "guilty plea" in her brief, in fact Kioca Hines attempted to plead guilty, but the trial court refused to accept her guilty plea. The record reflects that, after being sworn and questioned by the prosecutor about the underlying facts on August 8, 2001, Kioca Hines began a Boykin colloquy with the trial judge. The proceeding came to an abrupt halt, however, when the judge asked Kioca Hines about drug use, as follows:
BY THE COURT:
Are you under the influence of drugs now?
BY THE DEFENDANT:
No, ma'am.
BY THE COURT:
Have you taken any drugs in the last 72 hours?
BY THE DEFENDANT:
Yeah.
BY THE COURT:
What drugs have you taken in the last 72 hours?
BY THE DEFENDANT:
Marijuana.
BY THE COURT:
You smoked marijuana in the last 72 hours? Ms. Hines, get in the box. I'm remanding you, and we will sentence you, and go through this next Wednesday after you've had an opportunity to clearly understand what you are doing here today.
Ms. Hines, I am going to hold you for seven days on a contempt citation, so that next Wednesday when you come in here to plead guilty I know you are clean. Are we clear on that?
BY THE DEFENDANT:
(NODS HEAD AFFIRMATIVELY)
BY THE COURT:
Ms. Hines, based upon your statement to me under oath, I find that you have violated the terms and conditions of your probation by usingexcuse me, your bond. By using illegal drugs during the course of your bond period, and therefore I am sentencing you to a seven day sentence for contempt of court. Your plea of guilty will be reset for next Wednesday at 1:30.
The next minute entry indicates that Kioca would tender a plea on August 30, 2001. But the following minute entry, August 31, 2001, states, "Court vacated and voided the Defendant's plea/boykin." Thus, the record reflects that Kioca Hines attempted to enter a guilty plea, but the trial judge did not accept it.
We also note that the defense, not the State, moved to admit Kioca Hines' Waiver of Rights form and the minute entry of August 31, 2001. In fact, these documents *539 are labeled "Defendant's Exhibit # 1" and "Defendant's Exhibit # 2", respectively. Similarly, the defense rather than the State moved to introduce the transcript of Kioca Hines' attempted guilty plea, with certain portions of that transcript excluded. The court ruled that the transcript was admissible, since Kioca Hines was unavailable as a witness because she would assert the privilege against self-incrimination. After lengthy discussions, the court ruled that an edited version of the transcript would be read to the jury.
During the discussion, the State raised the issue of admitting Kioca Hines' Waiver of Rights form and the August 31, 2001 minute entry. The Waiver of Rights form indicated that Kioca Hines would have received a five-year suspended sentence and five years of probation, and the minute entry stated, "Defendant admitted to drug usage at the time the plea was tendered." The court gave the defense the opportunity to withdraw the request to have the transcript admitted, but the defense declined. After objection from all three defense attorneys, the trial judge found the two documents admissible in the State's case in rebuttal.
When trial resumed, the State rested and published its exhibits to the jury. As part of the defense's case, the edited transcript was read to the jury. Immediately thereafter, Mr. Regan, the attorney for codefendant Floyd, moved to have the Waiver of Rights form and the August 31, 2001 minute entry admitted as defense exhibits. When the court asked whether the exhibits were a defense or a joint exhibit, Mr. Regan proposed that the exhibits be joint exhibits, but the State indicated that the exhibits could be defense exhibits.
Thereafter, the defense rested, followed by the State with no rebuttal. The documents were then published to the jury. When the court inquired whether these documents were the only exhibits introduced by the defense, all three defense attorneys answered affirmatively.
On appeal, defendant now complains that these documents should not have been admitted.
La.C.Cr.P. art. 841(A) provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose of the contemporaneous objection rule is to put the trial judge on notice of the alleged irregularity so that he or she may cure the problem and to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by objection. State v. Thomas, 427 So.2d 428, 433 (La.1982); State v. Ware, 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 504.
In State v. Simmons, 00-35 (La.App. 5 Cir. 7/25/00), 767 So.2d 860, 861-862, this Court held that the defendant acquiesced in the admission of a police report by his stipulation to facts in the report and by his failure to make an objection to the admission of the report. In State v. Alexis, 98-1145 (La.App. 5 Cir. 6/1/99), 738 So.2d 57, 69, writ denied, 99-1937 (La.10/13/00), this Court held that the defendant had abandoned his mistrial motion when he later acquiesced in a remedy other than the requested mistrial.
In the present case, counsel for Stacey Hines initially objected to the documents, but made no objection when the documents were introduced as defense exhibits by co-defendant Floyd's attorney. Further, Hines' attorney acknowledged that the two documents were the only exhibits introduced by the defense. By acquiescing and failing to make a contemporaneous objection to the admission of the documents as defense exhibits, defendant *540 abandoned her original objection to the documents.

PATENT ERROR
Pursuant to La.C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990), we reviewed the record for errors patent. We note the following matters:
There are discrepancies between the commitment and the transcript, as follows:
(1) There are two commitments for January 23, 2002. One of the commitments indicates that defendant received a sentence of "D7 years, 6 months." The next commitment indicates defendant "pleaded guilty under R.S. 15:512.1" and that the original sentence was vacated. However, the transcript for January 23, 2002 does not reflect that defendant received an original sentence. The transcript indicates only that the defendant admitted to being a second felony offender after having been advised of her multiple offender rights, and that she received a multiple offender sentence of seven and one-half years in the Department of Corrections without benefit of probation or suspension of sentence. Since the transcript reflects that the defendant was sentenced only once, there should only be one commitment.
(2) The transcript reflects that defendant was sentenced without benefit of probation or suspension of sentence, but the commitments do not so reflect.
(3) Further, the commitment states, "Court Recommends the Defendant to be enrolled into Sherff [sic] Foti's About Face Program at Orleans Parish Parish [sic]." The next commitment contains the same reference, but says that the program is at the Orleans Parish Prison. The transcript reflects that the trial court ordered that "at the first time permitted legally, your sentence shall be served with the About Face Program in the women's unit, which program you shall receive drug counseling and all other counseling permissible." The transcript does not reflect that the trial court said anything about Sheriff Foti or Orleans Parish Prison.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, the trial court must correct the commitment as indicated in (1)-(3) above.
Finally, the commitment reflects that the trial court advised defendant of the prescriptive period for filing post-conviction relief, as required by La.C.Cr.P. art. 930.8, whereas the transcript does not. That error can be cured by instruction to the trial court to correct the error. See State v. Gibson, 97-1203 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1281.
For the foregoing reasons, the conviction is affirmed. The case is remanded with the following instructions:
(I) The district court is ordered to amend the commitment so that it conforms with the transcript in the respects noted in (1), (2) and (3) above.
(II) The district court is ordered to inform the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and to file written proof that defendant received the notice in the record.
AFFIRMED AND REMANDED WITH ORDERS.
NOTES
[1] The predicate offense was an April 2001 guilty plea to second-offense possession of marijuana, a felony under La.R.S. 40:966(C).
[2] Kioca Hines and Michelle Hines are sisters of Stacey Hines.
[3] The jury was told she was unavailable, but was not told the reason for that was that in order to testify she would have had to waive her Fifth Amendment rights.
[4] One judge concurred in the result and assigned additional reasons, and another judge dissented in the reversal of Mrs. Hodge's conviction.
[5] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).